**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 8:17-cv-826-T26AEP |
| ) | |
| **SAID RUM**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT SAID RUM'S MOTION FOR SUMMARY JUDGMENT**
**AND SUPPORTING MEMORANDUM OF LAW**

Defendant Said Rum, pursuant to Fed. R. Civ. P. 56, moves for summary judgment, on Plaintiff United States' ("Plaintiff") claim for penalties imposed under 31 U.S.C. § 5321, including interest and statutory additions claimed under 31 U.S.C. § 3717. Attached is Said Rum's statement of undisputed facts. There is no genuine issue of material fact relevant to this motion and Said Rum is entitled to judgment as a matter of law.

**INTRODUCTION**

On April 7, 2017, The United States filed this case to reduce to judgment and collect the imposed Report of Foreign Bank and Financial Accounts ("FBAR") penalties, together with accrued interest, late payment penalties, and associated fees. ¶29.[1] On June 7, 2017, Said Rum served his Answer to Plaintiff's Complaint. ¶30.

**STANDARD**

---

[1] All paragraph citations herein refer to Defendant Said Rum's Statement of Material Facts in Support of His Motion for Summary Judgment.

1

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Thermo-Ply, Inc. v. Ohio Willow Wood Co., No. 8:05-CV-779-T-17MAP, 2014 U.S. Dist. LEXIS 9667, at *2 (M.D. Fla. Jan. 24, 2014). "'The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Id. at *2-3 (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

"The moving party bears the initial burden of stating the basis for its motion for summary judgment and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. The moving party meets its burden if it demonstrates an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment." Salazar v. Am. Sec. Ins. Co., 2014 U.S. Dist. LEXIS 132747, *4-5, 2014 WL 4792003 (internal citations and quotations omitted).

"The moving party bears the initial burden of stating the basis for its motion for summary judgment and identifying those portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.' Celotex Corp. v. Catrett, 477

U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party meets its burden if it demonstrates 'an absence of evidence to support the nonmoving party's case.' *Id*. at 325. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. *Id*. at 324." Salazar v. Am. Sec. Ins. Co., No. 8:13-cv-02002-EAK-TBM, 2014 U.S. Dist. LEXIS 132747, at *4-5 (M.D. Fla. Sep. 22, 2014). Yet, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Cities Service, supra*, at 288-289. If the evidence is merely colorable, *Dombrowski* v. *Eastland*, 387 U.S. 82 (1967) *(per curiam)*, or is not significantly probative, *Cities Service, supra*, at 290, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## ARGUMENT

Said Rum is entitled to the relief sought because (I) the penalty assessed was arbitrary and capricious because it was not consistent with the regulations, and (II) any additions to the base amount was arbitrary and capricious because Plaintiff did not provide a reasoned explanation for the decision.

**I.   The Penalty Assessed Was Arbitrary And Capricious Because It Was Not Consistent With The Regulations.**

   **a. Plaintiff Went Above Its Delegated Authority When It Assessed FBAR Penalties That Exceeded The Scope Of The Financial Crimes Enforcement Network ("FinCEN") Regulations.**

Agencies have no power to act unless Congress gives it that power. *See* Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655, 670-71 (D.C. Cir. 1994). Congress gave the Treasury the power to enforce the Bank Secrecy Act ("BSA"), including the FBAR

3

penalties (¶6), and that power was then delegated to FinCEN (¶7).  This authority was next reconfirmed in subsequent Treasury Orders.  ¶7.  Later, FinCEN redelegated parts of its authority to the Internal Revenue Service ("IRS").  ¶8.

In administering the BSA, the IRS is required, because of its delegated authority from FinCEN, to apply all existing regulations until they are replaced or revised.  *See* Exhibit 1—*Colliot* Motion at p.3.  Accordingly, Treasury Order 180-01, p.1 section 6.a. (Mar. 24, 2003) (emphasis added) states:

> All regulations prescribed, all rules and instructions issued, and all forms adopted for the administration and enforcement of the Bank Secrecy Act, that were in effect or in use on the date of the enactment of the USA Patriot Act of 2001, ***shall continue in effect as regulations, rules, instructions, and forms of the Bureau until superseded or revised***.

The only position with the authority to issue regulations is the director of FinCEN.  *See id.* at p.1 section 3.  And, to reiterate, the IRS's FBAR authority comes only from the FinCENs delegation of that authority, and thus the IRS is required to follow FinCEN regulations.

The regulation 31 C.F.R. § 1010.820(g)(2) (previously numbered as 31 C.F.R. §103.57) is relevant and applicable to Said Rum's case because it sets the penalty for those reporting foreign bank accounts (under FBAR) by limiting the maximum penalty for willful violations to $100,000.00.  *See* ¶11.  It states: "In the case of a violation of § 1010.350 or § 1010.420 involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty not to exceed the greater of the amount **(not to exceed $100,000)** equal to the balance in the account at the time of the violation, or $ 25,000."  *Id.* (emphasis added).

And yet, it is clear that Plaintiff did not follow the above regulation, as it asserted a penalty of $693,607 against Said Rum, which is way greater than the $100,000.00 maximum. ¶¶11 & 17. Plaintiff even admitted it did not follow the above regulation. ¶16. Thus, Plaintiff ignored this existing FBAR regulation issued by FinCEN. *See* ¶11. And, the IRS was bound to apply this regulation under its delegated authority from FinCEN. So, by ignoring this regulation, the IRS's imposition of FBAR penalties was beyond its delegated authority.

According to 5 U.S.C. § 706(2)(C), a reviewing court shall "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Therefore, since Plaintiff went beyond its delegated authority when it did not follow the governing regulations for assessing FBAR penalties, the penalties it assessed Said Rum must be held unlawful by this reviewing court.

  **b. Since Plaintiff Did Not Use All The <u>Valid</u>, Binding FinCEN Regulations, Plaintiff's Assessment Of Penalties Is A De Facto Arbitrary And Capricious Agency Action.**

Plaintiff admitted that it did not use 31 C.F.R. § 1010.820(g)(2), a valid regulation, in assessing penalties against Said Rum. ¶16. Plaintiff stated that

> "[t]he IRS did not use the dollar amounts set forth in 31 C.F.R. § 1010.820(g)(2) as the potential maximum in assessing the FBAR penalties at issue against Defendant because it used the penalty range set forth by Congress in 26 U.S.C. § 5321(a)(5)(C), which supersedes the maximum range stated in 31 C.F.R. § 1010.820(g)(2)."

¶16.[2]

---

[2] However, this case is governed by title 31 and not title 26. And, 26 U.S.C. § 5321(a)(5)(C), which Plaintiff cites to, does not exist. It is assumed that Plaintiff meant to cite to 31 U.S.C. § 5321(a)(5)(C).

Plaintiff apparently believes that it is allowed to choose which FinCEN regulations to follow and which ones to ignore because there is **no** evidence that 31 C.F.R. § 1010.820 was superseded by statute or is no longer in force.

According to two recent court opinions, 31 C.F.R. § 1010.820 still is in force. *See* United States v. Colliot, No. AU-16-CA-01281-SS, 2018 U.S. Dist. LEXIS 149765, at *2 (W.D. Tex. Aug. 16, 2018); United States v. Wadhan, 325 F. Supp. 3d 1136, 1141 (D. Colo. 2018) ("As a result, the IRS lacks authority to impose a penalty in excess of $100,000 as prescribed by 31 C.F.R.§ 1010.820."). The court in *Colliot* held that the regulation prevented the United States from charging a penalty higher than $100,000. *Colliot*, 2018 U.S. Dist. LEXIS, at *2. A portion of the motion filed by defendant in *Colliot* is worth repeating in this motion for the Court's consideration. *See* Exhibit 1—*Colliot* Motion. The *Colliot* motion was well-reasoned, clear, and concisely set forth the argument on the issues facing the court in Said Rum's case. *See id.* The court in *Colliot* adopted the reasoning contained in the brief cited to. *See id.; see Colliot*, 2018 U.S. Dist. LEXIS, at *2.

The Court of Federal Claims' conclusion in Norman v. United States, 138 Fed. Cl. 189, 196 (Fed. Cl. 2018), simply is wrong because the court did not consider the amendments to 31 C.F.R. § 1010.820 after 2004 when it held that 31 C.F.R. § 1010.820 no longer is valid. The court in *Norman* did not address the subsequent changes to 31 C.F.R. § 1010.820 in 2016, when FinCEN amended § 1010.820, but did not change its connection to FBAR penalties. *See* ¶14 and a full argument below. The *Norman* court just assumed that the changes in 2004 (as Plaintiffs also did here, *see* ¶16) superseded the regulation, when in fact there were changes made after 2004, and before the *Norman* litigation, that updated §

6

1010.820 but not its inapplicability to FBAR penalties. ¶14. As argued more below, if FinCEN wanted § 1010.820 to be superseded by 31 U.S.C. § 5321(a), then it fourteen years to do so, but chose not to clarify that in its amendments. Also, none of the above cases are from the same circuit as this Honorable Court, and thus the issues here are of first impression.

The FinCEN issued the BSA regulations dealing with civil FBAR penalties using its notice-and-comment rulemaking procedures under the Administrative Procedure Act (APA), 5 U.S.C. § 553(b). ¶12. There are multiple instances where the FinCEN had the opportunity to change 31 C.F.R. § 1010.820, but chose not to. There are numerous amendments to the BSA regulations but not 31 C.F.R. § 1010.820's applicability to FBAR penalties. For example:

> [I]n 2010 FinCEN reissued the BSA regulations under Chapter X of Title 31, Subtitle B (issued through notice-and-comment rulemaking procedures) and expressly chose not to adopt any substantive changes to the FBAR compliance obligations and corresponding civil penalties provisions. *See* 75 Fed. Reg. 65806, at 65807 . . . , preamble excerpt). Next, in 2011, FinCEN amended the BSA regulations regarding FBARs (again issued through notice-and-comment rulemaking procedures). *See* 76 Fed. Reg. 10234 . . . . Despite extensive substantive changes to the regulations, no change was made to the FBAR penalty provisions contained in 31 CFR §103.57 (prior to renumbering as 31 CFR § 1010.820).
>      In 2016, FinCEN amended 31 CFR § 1010.820 ***which is the specific regulatory section dealing with FBAR penalties***. 81 Fed. Reg. 42503 . . . . This amendment added subsection (i) to § 1010.820 to state "For penalties that are assessed after August 1, 2016, see §1010.821 for rules relating to the maximum amount of the penalty." In turn, § 1010.821 provides that the willful FBAR penalty imposed under 31 U.S.C. § 5321(a) shall be adjusted for inflation. "Multiplying the current maximum penalty amount of $100,000 by the inflation factor of 1.24588 results in an inflation-adjusted maximum penalty amount of $124,588, when rounded to the nearest dollar." *Id*. at 42504.
>      If FinCEN wishes to revise or rescind 31 CFR § 1010.820, it must do so through notice and-comment rulemaking procedures. Rules issued through

> the APA notice-and-comment process are "legislative rules" because they have the "force and effect of law." *Perez v. Mortgage Bankers Assn.*, 135 S. Ct. 1199, 1203 (2015) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979)). The APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance." *Id*. at 1206 (citation omitted); *see also* 5 U.S.C. § 551(5) and §§ 553(b), (c). Because the FBAR penalty regulations were issued through notice-and-comment rulemaking procedures, FinCEN must similarly use such APA procedures to amend or repeal such rules. Until it does so, 31 CFR § 1010.820 and its predecessor, 31 CFR § 103.57, represent valid and enforceable regulations.

Exhibit 1—*Colliot* Motion at p.5-6.

Plaintiff's admission above suggests that 31 C.F.R. § 1010.820 is no longer in force because it was superseded by the mandatory provisions of 31 U.S.C. § 5321(a)(5), which Said Rum argues is a misstatement and misapplication of the law. Although amendments to 31 U.S.C. §5321(a)(5) in 2004 authorized FinCEN to adopt a higher penalty, that amendment merely provides FinCEN with the *discretion* to impose a higher, maximum penalty than previously permitted. *See* 31 U.S.C. § 5321(a)(5) ("Secretary of the Treasury *may impose* a penalty" in an amount that "***shall not exceed***" and that the "***maximum penalty***" is the greater of $100,000 or 50 percent of the balance in the account). "That language does *not* require any minimum penalty amount, nor does it require the implementing federal agencies to adopt or impose penalties at the maximum amounts authorized by statute." Exhibit 1—*Colliot* Motion at p.7.

> Importantly, FinCEN, subsequent to the statutory amendment relied upon by the government, reissued the FBAR regulations (as described above) *without* incorporating the higher statutory maximum, and reiterating the preservation of the prior maximum. Moreover, when FinCEN amended § 1010.820 in 2016, it expressly stated that "violations occurring on or before November 2, 2015 . . . will continue to be subject to the civil monetary

> penalty amounts set forth in FinCEN's existing regulations." (*See* [81 Fed. Reg. 42503] at 42505). If FinCEN had wanted to exercise its Congressionally-delegated discretion to increase the FBAR penalty maximum (beyond the inflation adjustment made in 2016), it had **ample opportunity to do so during the multiple amendments made to the BSA regulations as described above. Its silence in this regard is telling.**
>
> The Supreme Court long ago noted that the "[BSA's] civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *California Bankers Assn. v. Shultz*, 416 U.S. 21, 26 (1974). Moreover, through the authorizing statute, Treasury was granted broad discretionary authority for determining whether and how much of a civil penalty to impose. As the federal agency vested with sole regulatory authority for enforcing the penalty, FinCEN exercised such discretion by adopting implementing regulations through notice-and-comment rulemaking procedures that capped the penalty at $100,000 per violation. . . .
>
> Moreover, as recent as 2012 the IRS directly cited to 31 CFR § 1010.820 as authority for assessment of FBAR penalties in connection with the redelegation of such authority within the ranks of its own agency. *See* Delegation Order 25-13, ¶¶ 2 & 38 (effective April 11, 2012). . . .

Exhibit 1—*Colliot* Motion at p.7-8 (emphasis added).

Plaintiff was mistaken about the nonapplication of 31 C.F.R. § 1010.820. Plaintiff apparently believes that FinCEN did not have to repeal the regulation because the law changed. But, the regulation was re-enacted *after* the law was passed—as pointed out above, 31 C.F.R. § 1010.820 was amended in 2016. There is no reason why 31 C.F.R. § 1010.820(g) no longer is binding law when it was amended so recently (but there was no change to the penalty limit), and during the litigation of Said Rum's case. Is Plaintiff claiming that FinCEN purposely enacted a regulation that purposely contained language that should be ignored? This would make no sense and be pure speculation. The court should follow the written word of a regulation promulgated after enactment of the law upon which it is based. Therefore, Plaintiff's claim that 31 C.F.R. § 1010.820 does not apply in the present case is unfounded and incorrect.


Besides the fact that the penalty limitation has **not** been withdrawn or revised, Plaintiff cited to 31 C.F.R. § 1010.820 as authority. Indeed, the Form 13449, "Agreement to Assessment and Collection of Penalties under 31 U.S.C. 5321(a)(5) and 5321(a)(6)," which was attached to Said Rum's Letter 3709, cites 31 C.F.R. § 1010.810(g)(2) and former 31 C.F.R. § 103.57(g)(2) as authority for imposing the willful FBAR penalties against Said Rum. ¶15. This is the same regulation that purportedly provides no authority for the FBAR penalty amounts imposed here. *See* ¶16.

The law states, under 5 U.S.C. § 706(2)(A), that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." The arbitrary and capricious standard requires the agency to engage in "reasoned decisionmaking" (Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52 (1983)) and "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* at 43 (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). "In reviewing that explanation, [the court] must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* at 43 (citing Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)).

There is no way the IRS can engage in "reasoned decisionmaking" (*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 52) when it did not even consider the existing regulation (31 C.F.R. § 1010.810) in deciding the penalties to assess Said Rum. And, Plaintiff provided no rational

reason or explanation why 31 C.F.R. §§ 1010.350(a) and 1010.306(c) should be applied to Said Rum (¶15), but not 31 C.F.R. §§ 1010.820 and 103.57. Plaintiff's explanation that 31 C.F.R. § 1010.820 was superseded (¶16) is incorrect, as Said Rum has laid out in the above arguments. Therefore, Said Rum cannot accept this as a "satisfactory explanation" (*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43) for why an applicable regulation (31 C.F.R. § 1010.810) was not applied in his case.

To summarize, the IRS admits it did not apply FinCEN FBAR regulation 31 C.F.R. § 1010.810(g)(2) in assessing the penalty here because it believed the regulation was not in force. But, as articulated above, the regulation is valid and has not been withdrawn. Plaintiff even cited to these regulations in the Letter 3709 sent to Said Rum. *See* ¶15. As Plaintiff has stated it did not apply the applicable law (*see* ¶16) and did not provide any satisfactory explanation for its decision to deviate from the law, assessing the FBAR penalties was an arbitrary and capricious decision and an abuse of discretion by Plaintiff. Thus, this unlawful agency decision should be withdrawn.

    c. **The Penalties Assessed By The IRS Are In Direct <u>Violation</u> Of The Governing Regulations.**

As stated above, FinCEN used its regulatory authority to issue the regulations for assessing civil penalties for FBAR reporting violations. The applicable regulation, 31 C.F.R. § 1010.820(g) (emphasis added), clearly states:

> (g) For any willful violation committed after October 27, 1986, of any requirement of § 1010.350, § 1010.360 or § 1010.420, the Secretary may assess upon any person a civil penalty . . . (2) In the case of a violation of § 1010.350 or § 1010.420 involving the failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty ***not to exceed*** the greater of the amount ***(not to***

> *exceed $100,000)* equal to the balance in the account at the time of the violation, or $25,000.

As discussed above, 31 C.F.R. § 1010.820 was adopted (effective March 1, 2011) without change to its predecessor 31 C.F.R. § 103.57. Since FinCEN has made the decision to not adopt substantive changes 31 C.F.R. § 1010.820(g)(2) (as in changing 31 U.S.C. § 5321(a)(5) to conform with 31 C.F.R. § 1010.820(g)(2)), the maximum penalty for willful violations of 31 U.S.C. § 5314 remains the regulatory maximum of $100,000.00. *See* Exhibit 1—*Colliot* Motion at p.10. And, "[i]t is clear that '[a]n agency is not free to deviate from a valid existing rule. . . . An agency must follow its own rules.'" ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd., 439 F. Supp. 2d 1242, 1290 (S.D. Fla. 2006) (internal citation omitted).

Thus, clearly the applicable FinCEN regulation for FBAR penalties was not followed when the IRS assessed a penalty for taxable year 2007 on Said Rum's UBS account in the amount of $693,607.00 (¶17), as this penalty is much greater than FinCEN's $100,000.00 cap (31 C.F.R. § 1010.820(g)(2)). ¶11.

As stated above, 5 U.S.C. § 706(2)(A) says that an agency action that is "not in accordance with law" must be held "unlawful and set aside." Here, the penalty assessed against Said Rum was in violation of the applicable law, as it was above the maximum, and therefore it must be set aside.

II. **Any Additions to the Base Amount Were Arbitrary and Capricious Because Plaintiff Did Not Provide A Reasoned Explanation For The Decision.**

In Moore v. United States, 2015 WL 1510007, *1 (W.D. Wash. Apr. 1, 2015), the court discusses what must be done when an agency deviates from their own rules, quoting 5

U.S.C. § 555(e). The court explained specific portions of the statute, holding: "[T]he only portion of § 555 that is relevant is the requirement that an agency must give 'prompt notice … of the denial in whole or in part of a written application, petition, or other request … made in connection with any agency proceeding.'" *Id.* at *8 (quoting 5 U.S.C. § 555(e)). The court elaborated further on the statute: "That portion also requires that, '[e]xcept in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a **brief statement** of the grounds for denial.'" *Id.* (emphasis added) (quoting 5 U.S.C. § 555(e)).

"The court will permit the Government to supplement the record to provide some basis for the court to conduct review of its penalty assessment." *Id.* at *11. The judge added: "*[U]nless the Government provides **evidence** articulating its **reasons** for assessing a maximum penalty . . . , the court will have no recourse but to hold that it acted arbitrarily and capriciously.*" *Id.* (second emphasis added).

"The IRS's refusal to disclose anything about the basis for its decision until this litigation, and in particular its decision to withhold Agent Batman's memorandum until after the court ordered it produced, was arbitrary and capricious." Moore v. U.S., 2015 WL 4508688, at *1 (W.D. Wash. July 24, 2015). The IRS opposed a motion to compel the appeals case memorandum in *Moore*. *See id.* This is similar to Said Rum's case because Svetlana Wrightson's Appeals Case Memorandum was not produced at all until discovery (¶26), even when it was asked for in Said Rum's Freedom of Information Act ("FOIA") request (*id.*). Not receiving the Appeals Case Memorandum was significant to Said Rum's case because he was not able to defend himself against the IRS FBAR Appeal's allegations. Said Rum did not know why the IRS charged a 50% penalty as opposed to another amount.

13

The significance is not in lacking access to the particular document, but rather that this document provided the only possible explanation for the penalties ordered of Said Rum.

"No citizen should have to sue his own Government to find out why he is being fined, or to find out why he is being fined $40,000 as opposed to a smaller amount." *Moore*, 2015 WL 4508688, at *1. The court in *Moore* ended up disallowing the imposition of interest and other charges on top of the FBAR penalties to prevent "the IRS from profiting by imposing penalties without explaining them." *Id.* at *2.

*Moore* entitles Said Rum to a brief **statement** explaining why he was given the 50% penalty. *See Moore*, 2015 WL 1510007, at *8. Here, nowhere in documents, including the Letter 3709, from the IRS to Said Rum *before this litigation* is there a reasonable explanation for why the IRS imposed a 50% willful penalty on Said Rum as opposed to another, lower amount. ¶23. The IRS uses the Letter 3709 for "describing the penalty that applies to" the taxpayer; in order words, as the explanation for why the IRS assessed a 50% penalty, as opposed to another amount, in Said Rum's case. ¶21. Said Rum's Letter 3709 stated:

> We are proposing the assessment of a penalty under 31 U.S.C. § 5321(a)(5) for failing to meet the filing requirements of 31 U.S.C. § 5314. For each calendar year, any U.S. person having one or more foreign accounts with maximum balances aggregating over $10,000 is required to file Form TDF 90-22.1, *Report of Foreign Bank and Financial Accounts* with the Internal Revenue Service by June 30th of the following year.
> . . .
> For the willful failure to file TDF 90-22.1 due on or after June 30, 2005, the penalty cannot exceed the greater of 1.) $100,000 or 2.) 50% of the amount of the transaction (in such case as a violation involving a transaction) or the balance in the account (in such case as a violation involving a failure to report the existence of an account or a failure to provide identifying information with respect to an account).

¶22.

Despite the Letter 3709's purpose of providing Said Rum with an explanation, it does nothing of the sort. *See* ¶22. Additionally, the IRS Appeals Office told Said Rum that the "Reason for sustained penalty" was because: "The arguments you presented verbally and in writing do not support a different determination."  ¶27. However, this one simple sentence hardly is an explanation as to why the IRS FBAR Appeals sustained a penalty so significant—a penalty much larger than the $40,000 penalty in *Moore*. 2015 WL 4508688, at *1. And, this one sentence does not clarify why Appeals charged Said Rum 50% as opposed to a lower amount. Thus, because Plaintiff did not tell Said Rum why he was charged 50%, he had no opportunity to respond or contest the allegations. He did not learn until July 5, 2018, as a result of this litigation, why he was assessed the 50% penalty as opposed to another amount.

There is no reference to the **mitigation** factors in the Letter 3709 (¶20), and whether Said Rum met these. ¶23. Clearly, for Said Rum to qualify for discretion, he needed to meet the mitigation threshold conditions under Internal Revenue Manual ("IRM") 4.26.16.4.6.1(2). ¶19. However, there is no mention in the Letter 3709 (¶23) or other documents received by Said Rum before this litigation that explains why he did not meet these mitigation threshold conditions, or even that mitigation was an option in this case. If Plaintiff disclosed to Said Rum the reasons for denying mitigation in his case, he could have had the opportunity to fight the accusations and disprove the agent's theories.

Also, nowhere in the Letter 3709 is there mention of the agent's **discretion** to select a penalty amount, and why the IRS chose not to use discretion in Said Rum's case. *See* ¶23. Multiple sections of the IRM give the FBAR Examiners discretion to impose less than the

maximum penalty. ¶18. During the investigation of his case, Said Rum asked multiple times for the FBAR agents and appeals officers to use their discretion in assessing penalties against him. ¶25. However, he never did, before this litigation, receive an answer as to why the IRS employees chose to not use their discretion in assessing the penalty, even when he asked for them to use discretion. *Id.*

Said Rum should not have to resort to litigation and the corresponding costs to get these answers. *See Moore*, 2015 WL 4508688, at *1. The IRS FBAR Appeals Agents in Said Rum's case should have been aware of the requirement to provide him with a brief statement, as *Moore,* 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015), was issued before Said Rum's appeal was finalized. ¶28. Yet, the IRS FBAR Appeals choose to ignore the issues raised in *Moore* and allow Said Rum to receive a deficient, actually nonexistent, conclusion to why he was assessed a willful penalty of 50% and no discretion or mitigation were afforded to his case.

In summary, Plaintiff has not provided Said Rum with a reasoned explanation, and thus the maximum penalty assessment against Said Rum should be deemed arbitrary and capricious under the judicial review provisions of 5 U.S.C. § 706(2)(A). ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.")

## CONCLUSION

In conclusion, this Honorable Court should deem the decision to not follow the regulation and the lack of a brief explanation arbitrary and capricious and an abuse of discretion under 5 U.S.C. § 706(2).

WHEREFORE, for all the above reasons, Defendant Said Rum requests that this Court grant his motion for summary judgment and dismiss this case with prejudice. In the alternative, Said Rum asks this Honorable Court to reduce the penalties assessed to no more than $100,000.00 in accordance with 31 C.F.R. § 1010.820(g)(2). In addition, Said Rum asks this Court to deem the penalties and interest uncollectable, as an explanation was not provided (5 U.S.C. § 555(e)).

Respectfully submitted,

Dated: November 30, 2018        /s/ Venar Ayar

Venar Ayar
Ayar Law Group
Counsel for Defendant
30095 Northwestern Highway, Suite 102
Farmington Hills, MI 48334
Phone: (248) 262-3400
Fax: (248) 436-8117
venar@ayarlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically serve a true and correct copy upon all counsel of record.

<u>**/s/ Venar Ayar**</u>
Venar Ayar
Ayar Law Group
Attorney for Defendant
30095 Northwestern Highway, Suite 102
Farmington Hills, MI 48334
Phone: (248) 537-9447
Fax: (248) 537-9448
venar@ayarlaw.com