IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. Case No. 8:17-cv-826-T26AEP |
| | ) |
| SAID RUM, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

This is a civil action by the United States to recover civil penalties assessed against Said Rum for willfully failing to disclose his interest in a foreign bank account for the 2007 tax year. All United States citizens are required to annually report their foreign bank accounts to the Internal Revenue Service on a form commonly referred to as an FBAR. A citizen who willfully fails to report a foreign bank account in excess of $10,000 is liable for a civil penalty not to exceed 50 percent of the account balance. In this instance, the undisputed record establishes that in 2007 Rum willfully failed to report his account at UBS AG in Switzerland, and that a penalty in the amount of 50 percent of the account balance was properly assessed against him. No genuine issue of material dispute of fact exists. The government is entitled to judgment as a matter of law. Accordingly, the United States requests that the Court enter summary judgment in its favor.

There is substantial evidence that Rum willfully failed to report his foreign bank account as required by law. Rum opened the $1.1 million dollar account at UBS AG to avoid a potential judgment creditor, which shows that he did so for an improper purpose. Once his account was

1

opened, Rum took steps to ensure that it was not discovered, including electing a numbered account over a named account and paying a fee for UBS AG to hold all official correspondence rather than mailing it to his home address. These affirmative acts reveal that Rum was intentionally concealing his account. Evidence of Rum's willfulness also includes that he checked the box "no" on Schedule B of his Form 1040 tax return each year in response to the question of whether he owned a foreign bank account. The fact that Rum did so regularly over multiple years shows that he acted intentionally rather than inadvertently. Additional evidence of Rum's willfulness includes that he failed to report the income and gains from his UBS AG account each year despite that he reported the income earned from his domestic bank account. Rum knew the interest income from his UBS AG account should be reported, and he intentionally failed to report it.

      Rum knew as early as 2002 that his foreign bank account was subject to federal tax reporting requirements because he was advised by UBS AG at that time that he was required to file a Form W-9 disclosing his interest in the account to the IRS. Despite notice of this requirement, Rum failed to file a Form W-9. Rum's actions to conceal his foreign bank account continued unabated for a decade, and only changed after he learned that the IRS had served a John Doe Summons on UBS AG in 2008 seeking account information of US taxpayers. Even then, Rum's first action was not to report his account and pay his delinquent taxes, but rather to move his account to another bank in Switzerland. In fact, Rum only filed his first FBAR and amended tax returns reporting his foreign interest income <u>after</u> he learned from UBS AG that his account information had been provided to the IRS. Even after learning of the disclosure of his account information, Rum did not fully repent because he never reported the more than $300,000

gain he realized during the ten years he held the account at UBS AG. Rum's extensive pattern of evasive conduct over a decade demonstrates that he intentionally failed to report his foreign bank account as required by law. At the very least, he was reckless and/or willfully blind to his reporting requirements, either of which constitutes willfulness under the law. The undisputed record supports the imposition of the willful FBAR penalty against Rum in the amount of 50 percent of his account balance on the date that the FBAR was required to be filed.

In support of this motion, the United States relies on the contemporaneously filed Statement of Undisputed Facts ("Facts"). In addition, the United States relies on the following exhibits, which are attached: Exhibit 1 - Certification of Conference to Narrow Factual Issues; Exhibit 2 – Rum's 2007 Form 1040 Return; Exhibit 3 - Form TD F 90-22.1; Exhibit 4 – Declaration of Nancy M. Beasley; Exhibit 5 – Deposition Transcript of Said Rum; Exhibit 6 – UBS AG Certification of Business Records pursuant to Fed. R. Evid. 902(12) and UBS AG bank records; Exhibit 7 - Declaration of Marjorie Kerkado; Exhibit 8 – Rum's Tax Court Petition; Exhibit 9 – Rum's Interrogatory Responses; Exhibit 10 – Rum's 2009 Form 1040; Exhibit 11 – July 1, 2008 Order Granting IRS Request for John Doe Summons to UBS AG; Exhibit 12 – IRS John Doe Summons Acknowledgment; Exhibit 13 – UBS Notice to Account Holders; Exhibit 14 – Arab Bank Records; Exhibit 15 – Rum's November 24, 2009 Letter to Arab Bank; Exhibit 16 - May 26, 2010 Letter from UBS to Rum; Exhibit 17 – Rum's 2008 FBAR; Exhibit 18 – Internal Revenue Manual 4.26.16 Bank Secrecy Act.

## SUMMARY JUDGMENT STANDARD AND STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A district court determines *de novo* whether a defendant is liable for the penalty arising from a taxpayer's failure to meet the reporting requirements applicable to foreign accounts. As such, this Court should render its liability determination based on the merits of the evidence presented in this action. *United States v. Williams*, 2010 WL 34773311, at *1 (E.D. Va. 2010), *rev'd on other grounds*, 489 Fed. Appx 655 (4th Cir. 2012); *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012); *Bedrosian v. United States*, No. 15-5853, 2017 WL 4946433, at *2 (E.D. Pa. Sept. 20, 2017)

Because the pertinent statute gives the Secretary of the Treasury discretion as to the amount of the penalty, this Court should review the assessment to determine whether the penalty's size is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.§ 706(2)(A); s*ee also United States v. Williams (Williams III)*, No. 1:09-cv-437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014).

## BACKGROUND

### I.     The Foreign Bank Account Reporting Requirement

Citizens of the United States such as Rum are subject to taxes on their income, regardless of where it is earned. 26 U.S.C. § 61(a); 26 C.F.R. § 1.1-1(b). The Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act ("BSA"), was enacted to ensure that citizens meet the requirement to pay taxes on income earned abroad and "to detect

and prosecute criminal activity." *See* Pub. L. 91-508, 84 Stat. 1114 (1970) (31 U.S.C. §§ 5311 *et seq.*); *see also* H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4395, 4397 (stating that the BSA was enacted to deal with major issues in law enforcement, one of which was the use of secret foreign bank accounts to evade income taxes); *United States v. Simonelli*, 614 F.Supp.2d 241 (D. Conn. 2008), *quoting*, 31 U.S.C. § 5311. Congress recognized that citizens' use of undisclosed foreign financial accounts caused significant federal tax losses as well as a gaping disparity in the enforcement of the internal revenue laws. 1970 U.S.C.C.A.N. at 4397–98 (observing that "[s]ecret foreign financial facilities" offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion").

To fill the information gap, the BSA instructs the Secretary of the Treasury to require U.S. citizens "to keep records, file reports," or both, when the citizen "makes a transaction or maintains a relation . . . with a foreign financial agency." 31 U.S.C. § 5314(a). Pursuant to that statute, the Secretary published regulations requiring any citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" to report certain details about the account to the Treasury Department. 31 C.F.R. § 1010.350(a).[1] The report must be made each year by filing a Form TD F 90–22.1, Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR." *See* 31 C.F.R. § 1010.306(c).  An FBAR must be filed with the Treasury Department no later than June 30

---

[1] Treasury Regulations applicable to FBAR penalties were contained in the Code of Federal Regulations Title 31, part 103, until 2010 when they were moved to Title 31, Part 1010.  *See* 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c).  For convenience, the most recent location of these regulations is cited.

"with respect to foreign financial accounts exceeding $10,000 maintained during the previous . . . year." *See id.*

To alert citizens to the filing requirement, Schedule B of each year's Form 1040 contains the following check-the-box question:

> **Part III Foreign Accounts and Trusts**
> (See page B-2.)
>
> You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; or **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust.    Yes   No
>
> **7a** At any time during 2007, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for Form TD F 90-22.1. . . . . . .
> **b** If "Yes," enter the name of the foreign country ▶ ..............................................................
> **8** During 2007, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See page B-2 . . . . . . . .
>
> For Paperwork Reduction Act Notice, see Form 1040 instructions.                Schedule B (Form 1040) 2007

*See, e.g.*, Rum's 2007 IRS Form 1040 Income Tax Return, at Ex. 2 (Schedule B). The instructions for Schedule B require "Yes" to be checked on line 7a if the filer had authority to sign or direct the use of a foreign account. *Id.* Schedule B further refers taxpayers to Form TD F 90–22.1, that is, the FBAR, which provides specific instructions for reporting a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country. *Id.*; *see* Ex. 3, *TD-F 90-22.1, Report of Foreign Bank and Financial Accounts, Rev. Oct. 2008 with Instructions*, SEC.gov, https://www.sec.gov/about/offices/ocie/aml/f90221.pdf; *McBride*, 908 F. Supp. 2d at 1200 n.2.

## II.    The Civil Penalty for Willful Failure to Report a Foreign Bank Account

The Secretary of the Treasury is authorized to impose a civil penalty on any person who does not comply with the requirement to report a foreign bank account. 31 U.S.C. § 5321(a)(5). Where the failure is "willful," the amount of this penalty cannot exceed the greater of $100,000 or 50 percent of the balance of the account at the time of the violation. 31 U.S.C.

§ 5321(a)(5)(C)(i); 31 U.S.C. § 5321(a)(5)(D). There is no reasonable cause exception for a willful violation. 31 U.S.C. § 5321(a)(5)(C)(ii).

A person is subject to the willful failure to file an FBAR penalty under § 5321(a)(5) if the following four elements are met:

1. The person is a United States citizen;
2. The person had an interest in or authority over a foreign financial account;
3. The financial account had a balance that exceeded $10,000 at some point during the reporting period; and
4. The person willfully failed to disclose the account and file an FBAR form for the account.

*United States v. Pomerantz*, No. C16-689, 2017 WL 4418572, at *2-3 (W.D. Wash. Oct. 5, 2017); *United States v. Toth*, 2017 WL 1703936, at *4 (D. Mass. May 2, 2017); *McBride*, 908 F. Supp. 2d at 1201; *Bedrosian*, 2017 WL 1361535, at *3.

## ARGUMENT

The Internal Revenue Service assessed $693,607 in penalties against Rum for his willful failure to meet his foreign account reporting obligations for 2007. Beasley Decl. ¶ 3; Ex. 4, IRS Forms 13448 Penalty Assessment Certification (Title 31 "FBAR"), USA. The penalties involved a bank account Rum maintained at UBS AG, in Switzerland.

The undisputed evidence establishes that Rum is liable for a willful FBAR penalty in the amount of 50 percent of his foreign account balance because each of the necessary elements has been satisfied.

## I. Rum Was Obligated To Report His Foreign Bank Account In 2007

### A. Rum is a United States Citizen

Rum has been a United States citizen since at least 1982. Facts ¶ 1.

### B. Rum Had a Financial Interest in And Authority Over a Foreign Bank Account in 2007

A person has a financial interest in a financial account in a foreign country if "the owner of record or holder of legal title is a person acting as an agent, nominee, attorney or in some other capacity on behalf of the United States person with respect to the account." 31 C.F.R. § 1010.350(e)(2)(i). Rum was the exclusive beneficial owner of his account at UBS AG during 2007. Facts ¶ 6. As such, Rum had "a financial interest in" and "signatory or other authority over" the UBS AG account for the 2007 tax year and was subject to the FBAR reporting requirement. 31 C.F.R. § 1010.350(a).

### C. The Balance of the Account Was Greater Than $10,000 During 2007

In 2007, the balance of Rum's UBS AG account exceeded $10,000 at some point during the reporting period. Facts ¶ 62. The evidence shows that Rum's monthly balance for each month in 2008 exceeded $1.6 million:

| Year | Bank Account | Account Number Ending | Lowest Monthly Account Balance | Exhibits |
|---|---|---|---|---|
| 2007 | UBS AG | 0125 | $1,642,016.86 | Ex. 6, Bates UBS00010 |

Therefore, Rum was required to report his interest in his UBS AG account to the Internal Revenue Service. *See* 31 U.S.C. § 5314.

## II.     Rum Willfully Failed to Report His Foreign Account for 2007

### A. The Legal Standard for Willfulness

Section 5321 authorizes a penalty for willful violations of the reporting requirement, but fails to define the term "willful." 31 U.S.C. § 5321.  In civil cases, willfulness includes both knowing and reckless violations of a standard.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007) (explaining that this definition is consistent with common law usage of the term, which treated reckless disregard of the law as a willful violation).  The term willfulness includes all conduct that is voluntary, but not conduct that is merely accidental or unconscious. *McBride*, 908 F.Supp.2d at 1205; *United States v. Garrity*, 304 F. Supp. 3d 267, 274 (D. Conn. 2018); *United States v. Bohanec*, 263 F.Supp. 3d 881, 888 (C.D. Cal. 2016); *Bedrosian*, 2017 WL 4946433, at *4.

Reckless disregard of a statutory duty satisfies the willfulness standard. *McBride*, 908 F.Supp.2d at 1204; *Bedrosian*, 2017 WL 4946433, at *4. Recklessness is evaluated using an objective standard that evaluates whether an action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Bedrosian*, 2017 WL 4946433, at *4 (quoting *Safeco Ins. Co.*, 551 U.S. at 68). The relevant inquiry is whether the failure to disclose the information was purposeful instead of inadvertent, not whether the taxpayer subjectively believed he was not required to file an FBAR.  See *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (finding that after it is established that a failure to disclose information was done purposefully, whether the filer believed he was legally justified in withholding the information is irrelevant); *McBride*, 908 F.Supp.2d at 1210 (finding that if subjective intent were required,

9

17170278.1

every person would be able to escape liability by avoiding learning of the reporting requirements).

Acting with "'willful blindness' to the obvious or known consequences of one's actions" also satisfies the willfulness standard. *Bedrosian*, 2017 WL 4946433, at *4 (quoting *McBride*, 908 F.Supp.2d at 1205). In the FBAR context, the government can show willful blindness by evidence that the non-filer made a "conscious effort to avoid learning about reporting requirements." *United States v. Williams*, 489 Fed.Appx. 655, 659-60 (4th Cir. 2012). Evidence of conduct intended to "conceal or mislead sources of income or other financial information" is evidence of willful blindness and recklessness. *Id.* at 660.

"An improper motive or bad purpose is not necessary to establish willfulness in the civil context." *McBride*, 908 F.Supp.2d at 1204 (internal citations omitted). Moreover, direct evidence of intent is not required to establish a violation was willful - persons who fail to file an FBAR are not likely to admit they knew of the filing requirement and chose not to comply with it. *Id*. at 1205. Willfulness can be shown through circumstantial evidence and reasonable inferences drawn from the facts before the court. *Id*.

### B. Rum Willfully Failed to File an FBAR for 2007.

Rum willfully failed to file an FBAR that reported his UBS AG bank account to the United States government for 2007. Rum was the exclusive owner of his account at UBS AG from 1998 through 2008, and was therefore undoubtedly aware of its existence. Despite that fact, Rum failed to file an FBAR for 2007. There is substantial evidence that Rum's failure to file the FBAR was willful. The undisputed record includes direct evidence of Rum's intent to conceal his foreign bank account, including:

- In 1998, Rum moved $1.1 million offshore in order to evade a potential judgment creditor, which demonstrates that he established his UBS account for an improper purpose. (Facts ¶ 14.)

- Rum elected to maintain a numbered account at UBS AG rather than an account in his name, which provided an additional layer of anonymity. (Facts ¶ 10.) *See Williams*, 489 Fed.Appx. at 660.

- Rum paid a fee to have his mail withheld by UB AG rather than have his bank statements and official mail delivered to his New York address, thereby avoiding the possibility of his foreign account information being disclosed to the IRS. (Facts ¶¶ 11, 12.) *See Bohanec*, 263 F. Supp. at 884; *Williams*, 489 Fed.Appx. at 660.

- Rum failed to file an FBAR for any year prior to tax year 2008 and never filed a report for tax year 2007 at any time. (Facts ¶¶ 58, 60.) *See Bohanec*, 263 F. Supp. at 886.

- Rum falsely indicated on Schedule B of his Form 1040 tax returns for years 2005 through 2009 that he did not have a foreign bank account, checking "no" each year in response to the question at line 7a asking whether he had a foreign account. (Facts ¶ 42.) *See McBride*, 908 F. Supp. 2d at 1198; *Bohanec*, 263 F. Supp. at 886.

- Rum failed to report his income from interest and capital gains earned on his UBS AG account on his Form 1040 tax returns for years 2005 through 2009 despite that he reported interest income he earned from his domestic bank accounts. (Facts ¶¶ 45, 55.)

- Although Rum claims he thought that he did not have to report the UBS AG income until the funds were repatriated, he did not report the gain earned by the UBS AG account on his return when the funds were repatriated in 2009; rather, Rum only reported the small gain earned during the year that the funds were held by Arab Bank. (Facts ¶ 45, 46.)

- Shortly after Rum was advised by UBS AG in July 2008 that the bank had been served with an IRS John Doe Summons seeking his account information, Rum closed his UBS AG account and transferred the funds to Arab Bank, also located in Switzerland. (Facts ¶¶ 17 - 19.)

- Rum gave inconsistent accounts to the IRS as to the reason for opening the UBS account, saying first that it was because he was sued in a slip and fall accident and later that it was because he was sued in a car crash. Despite that he admitted at deposition that the suit was dismissed six months after it was filed, Rum maintained the foreign account and did not repatriate the funds until 2009 when he was advised by Arab Bank that his account would be closed in 15 days. (Facts ¶ 16.)

- UBS AG bank records show that Rum was advised from as early as 2002 of his obligation to report his account to the IRS on Form W-9 and also provided additional regular notice to Rum that his account was subject to federal tax reporting requirements. Despite this notice, Rum never filed a Form W-9 (Facts ¶¶ 24-28).

- Rum only filed amended tax returns reporting the interest income he earned from the UBS AG account in 2007 after he was advised by UBS AG that his account information had been disclosed to the IRS pursuant to the IRS John Doe Summons. (Facts ¶¶ 55-56.)

- Rum never reported the more than $300,000 gain he earned over the ten years he maintained his bank account at UBS AG. (Facts ¶ 46.)

- Rum purposefully included his UBS AG account on his mortgage application despite that he failed to do so on his tax returns or college loan applications for his children, demonstrating that he claimed the account when it was in his financial interest to do so but denied its existence when it was not. (Facts ¶ 44.)

- Rum concealed his ownership of a Swiss bank account at Arab Bank from the IRS. In 2008 during the audit of his 2006 return, Rum disclosed that he previously had an account at UBS AG to the revenue agent conducting the audit. Rum provided the agent with a statement showing that the account had been closed, but did not disclose that the funds had been transferred to Arab Bank, another Swiss bank. This shows Rum's continued intent to conceal his ownership of a foreign bank account from the IRS. (Facts ¶ 61.)

There is also substantial evidence that Rum acted with reckless disregard or willful blindness of his duty to report his foreign bank account. That evidence includes:

- Rum never sought professional advice at any time from anyone concerning his tax obligations arising from his foreign tax account. (Facts ¶¶ 15, 17.) *See McBride*, 908 F. Supp. 2d at 1199; *Bohanec*, 263 F. Supp. at 880; *Bedrosian*, 2017 WL 4946433, at *4.

- Although Rum claims that someone else prepared his 2007 return, he did not advise that person about the existence of his foreign account or ask if he should report the interest income he earned as was done with his domestic bank account. (Facts ¶¶ 33-34.) *See McBride*, 908 F. Supp. 2d at 1199.

- Despite that Rum signed his 2007 return under the penalty of perjury and affirmed that the contents were true and correct, Rum claims he never reviewed his tax returns before signing them and therefore failed to notice that the box was checked "no" in response to the question on Schedule B line 7a as to whether or

12

    not he owned a foreign bank account. This recklessness or willful blindness is compounded by his failure to check this box "no" in earlier years he owned the account. (Facts ¶¶ 32, 52.). *See McBride*, 908 F. Supp. 2d at 1206; *Williams*, 489 Fed. Appx. at 659.

- Rum did not bother to read the direction on Schedule B advising him to read the instructions regarding his duty to file the FBAR form TD 90-22.1. (Facts ¶¶ 32,41.) *See McBride*, 908 F. Supp. 2d at 1206; *Bohanec*, 263 F. Supp. at 886.

- Rum ignored the notice on the first page of each UBS Income Statement for years 2002 through 2008 advising him that the information was provided to assist with the preparation of his US federal income tax return. (Facts ¶ 31.) *See Bohanec*, 263 F. Supp. at 886.

The *McBride* court counseled that evidence of improper motive or bad intent is not required to show willfulness. Reckless disregard and willful blindness are sufficient to support the imposition of a willful FBAR penalty. In the event that the Court finds that Rum did not intend to evade his legal obligation, there is ample undisputed evidence in the record to establish willfulness under both the reckless disregard and willful ignorance theories. *See McBride*, 908 F.Supp.2d at 1205 (constructive knowledge of reporting requirement is imputed to taxpayers who signed their federal tax returns); *Bedrosian*, 2017 WL 4946433, at *4 (willful blindness satisfies the standard and exists where one takes deliberate actions to avoid learning reporting requirements).

### III. The IRS Did Not Abuse Its Discretion in Assessing the Maximum Penalty for a Willful Violation.

    As discussed above, Rum is a United States citizen who willfully failed to report his interest in a foreign bank account with a balance of greater than $10,000 to the United States Government in 2007. Congress has imposed a maximum penalty for failing to comply with the reporting requirement, which cannot exceed the greater of $100,000 or 50 percent of the balance

in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C), (D). The IRS assessed a penalty against Rum within the limits of section 5321 as follows:

| Year | Bank Account | Account Number Ending | Exhibit Showing Account Balance | Account Balance 6/30/2008 | Penalty Assessed |
|---|---|---|---|---|---|
| 2007 | UBS AG | 0125 | Ex. 7 ¶ 22 | $1,387,214.93 | $693,607 |

The penalty assessed against Rum for his UBS AG account in 2007 is just under 50 percent of the account balance identified for the account as of the date his FBAR for that year was due.[2] As of November 21, 2018, the balance of unpaid penalty assessments owed by Rum is $770,800.21, including interest accrued under 31 U.S.C. § 3717. (Ex. 4, Balance Due Calculation; Beasley Decl. ¶ 6.)

The Secretary's assessment can adversely affect the person against whom the penalty is assessed, and the relevant statutes do not provide any organic route for judicial review. *See generally* 31 U.S.C. § 5321. The assessment, therefore, is subject to review under the Administrative Procedure Act (APA). *See* 5 U.S.C. §§ 702, 704. Because the statute gives the Secretary discretion as to the amount of the penalty, the Court reviews the assessment to determine whether the penalty's size is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); s*ee also United States v. Williams (Williams III)*, No. 1:09-cv-437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014) (holding that APA applied and the court would review FBAR penalty amount for an abuse of discretion).

---

[2] As noted above, an FBAR must be filed with the Treasury Department no later than June 30 "with respect to foreign financial accounts exceeding $10,000 maintained during the previous . . . year." *See* 31 C.F.R. § 1010.306(c).

17170278.1

"Under that narrow and deferential standard, the Court must not substitute its judgment for the agency's, and must only review the record to ensure that the agency engaged in reasoned decision-making and that there was a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Here, the penalty imposed on Rum was within the range authorized by Congress, and the IRS exercised its discretion reasonably in deciding to set the penalty at the top of the range.

Although no formal regulations govern the size of willful FBAR penalties, the IRS has provided informal guidance in the Internal Revenue Manual (IRM). The IRM lacks the force of law and is not binding, but it can still provide guidance to IRS officials. *See Keller v. Commissioner*, 568 F.3d 710, 720-21 (9th Cir. 2009); *see also Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006) ("The Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers."); *United States v. Bedford*, No. 8:15-CV-2487-T-26JSS, 2016 WL 6650721, at *5 (M.D. Fla. Nov. 10, 2016) (noting that the IRM does not bestow rights on taxpayers).

Although the IRM speaks in terms of the examiner exercising discretion[3] over the amount of an FBAR penalty, the IRM also sets forth mitigation guidelines to aid the examiner's determination. *See* IRM 4.26.16.4(6) (July 1, 2008) at ADM003621.[4] Under the IRM's non-binding guidelines, a person may be subject to less than the maximum penalty, depending on the

---

[3] The use of the term "discretion" in the IRM is not to be confused with the abuse of discretion standard under the APA. While the IRM speaks of the examiner's discretion, review under the APA focuses on the final agency action, *see* 5 U.S.C. § 704. Here, the final agency action is the ultimate imposition of the maximum willful penalty following all channels of supervisory review and an administrative appeal. The fact that the non-binding IRM speaks only of the examiner's "discretion" does not change the focus of this Court's review.

[4] A copy of IRM 4.26.16, as it existed during the time of Rum's FBAR examination, is attached as Exhibit 18.

size of the foreign account at issue, if the person meets four threshold conditions. *See* IRM 4.26.16.4.6.1 (July 1, 2008) at ADM003629. But even assuming that Rum met all the necessary conditions, which he did not, his presumptive penalty under the IRM guidelines still was the statutory maximum. Because Rum's account exceeded $1 million, his violation is classified as Level IV under the IRM and thus presumptively carries the maximum statutory penalty, even if Rum could satisfy the other mitigation guidelines. *See* IRM 4.26.16.4.6.3(3) (July 1, 2008) at Ex. 18, Bates ADM003631.

And while the IRM recognizes room for penalties that deviate from the presumptive amounts noted in the mitigation guidelines, any downward departures are based on the IRS's view of the facts and circumstances of the case. In short, "[a]lthough the IRS may impose a lower penalty where the violating taxpayer meets certain criteria, such departures are within the discretion of the agency." *Williams III*, 2014 WL 3746497, at *2 (citation to record omitted); s*ee also United States v. McBride*, 908 F. Supp. 2d 1186, 1214 (D. Utah 2012) (approving penalties calculated under IRM guidelines).

Here, the record before the Court provides ample support for the IRS's exercise of discretion to impose a penalty at the top end of the statutory range. Although all the documentation submitted in support of the United States' statement of material facts supports that conclusion,[5] a few key facts particularly highlight the justification of the maximum penalty. Rum claims that he opened his foreign account to evade a potential judgment creditor who had filed a lawsuit against him seeking $1.1 million in damages. (Facts ¶ 13; *see also* Kerkado Decl.

---

[5] As do all the facts cited in the examiner's memorandum explaining the reasons for the penalty, which was sent to Rum. (Kerkado Decl. at Ex. 7, Form 886-a Explanation of Items.)

16

at Ex. 7B, Form 886-a Explanation of Items, Bates ADM000370.) Rum also claims that he never sought advice from any professional about the tax obligations of owning a foreign bank account. (Facts ¶ 15.) Although Rum first opened the foreign account at issue in 1998, the first FBAR he filed was for tax year 2009. (Facts ¶¶ 8, 57.) Moreover, although Schedule B of the federal income tax return specifically asks if a taxpayer has an interest in a foreign bank account – and points the taxpayer to instructions for filing the FBAR if the answer is "yes" – Rum checked "no" on his returns year after year, despite the fact that he knew he owned a foreign bank account. (Facts ¶¶ 38-40; *see also* Ex. Kerkado Decl. at Ex. 7B, Form 886-a Explanation of Items, Bates ADM000375.) When Rum's 2006 Form 1040 came under audit in 2008, he failed to disclose his foreign account at Arab Bank, choosing instead to disclose only the account of which he thought the IRS already was aware. (Kerkado Decl. at Ex. 7B, Form 886-a Explanation of Items, Bates ADM000373-74, 377.)   Rum also did not provide UBS with a Form W-9, as required. (Facts ¶ 22; Kerkado Decl. at Ex.7B, Form 886-a Explanation of Items, Bates ADM000375.)  That failure kept UBS from submitting a Form 1099 to the IRS, which would have identified Rum to the IRS as a holder of a foreign bank account. (Kerkado Decl. at Ex. 7, Form 886-a Explanation of Items, Bates ADM000375.)  In addition, Rum did not report the income earned on his UBS AG account on his original federal tax returns. (Facts ¶ 42; Kerkado Decl. at Ex. 7B, Form 886-a Explanation of Items, Bates ADM000373.)  And even though Rum claimed he believed he did not need to report gain on his foreign account until he repatriated the funds, he proved this to be still another lie when he failed to report the bulk of the gain once he did repatriate the funds. (Facts ¶¶ 42-43.)

Rum's repeated pattern of actions, taken over many years, to avoid disclosure of his foreign bank accounts (as well as tax owed related to those accounts) amply justify the IRS's ultimate decision to impose the maximum penalty for Rum's failure to file the required FBAR for his 2007 tax year. Imposition of the maximum penalty under the circumstances of this case also reinforces Congress's intent when it increased the maximum penalty for willful violations to its current level. Until 2004, the maximum FBAR penalty was $100,000. *See* 31 U.S.C. § 5321(a)(5) (1996-2004). In explaining the increase in the maximum willful penalty as well as the creation of a new penalty for non-willful violations, the Senate Finance Committee explained:

> The Committee understands that the number of individuals involved in using offshore bank accounts to engage in abusive tax scams has grown significantly in recent years. . . . The Committee is concerned about this activity and believes that improving compliance with this reporting requirement is vitally important to sound tax administration, to combating terrorism, and to preventing the use of abusive tax schemes and scams.

S. Rep. 108-257, at 32 (2004); *see also Crawford v. U.S. Dep't of the Treasury*, No. 3:15-CV-250, 2015 WL 5697552, at *16 (S.D. Ohio Sept. 29, 2015). In increasing the maximum penalty, Congress gave the IRS an intentionally powerful tool to help enforce important law enforcement goals. The IRS did not abuse its discretion in exercising that tool here. As a result, the Court should uphold the amount assessed against Rum.

## CONCLUSION

There is no dispute that Rum acted with reckless disregard of his legal obligation to report his foreign bank account in 2007. Because there is no genuine dispute as to any material fact, the United States' motion for summary judgment should be granted.

Dated: November 30, 2018

                                      RICHARD E. ZUCKERMAN
                                      Principal Deputy Assistant Attorney General


By:    /s/ Mary Apostolakos Hervey
         Mary Apostolakos Hervey
         Laura M. Conner
         Trial Attorneys, Tax Division
         U.S. Department of Justice
         P.O. Box 14198
         Ben Franklin Station
         Washington, D.C. 20044
         Telephone: (202) 514-6484
         Facsimile: (202) 514-9868
         Mary.Apostolakos.Hervey@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Summary Judgment has been filed this 30th day of November, 2018 with the Court via ECF, which will transmit an electronic copy to all counsel of record.

<u>/s/ Mary Apostolakos Hervey</u>
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, DC 20044