IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. Case No. 8:17-cv-826-T26AEP |
| | ) | |
| SAID RUM, | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' OPPOSITION TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action by the United States to recover civil penalties assessed against Said Rum for willfully failing to disclose his interest in a foreign bank account for the 2007 tax year. From 1998 through 2008, Rum maintained a foreign bank account at UBS AG in Switzerland with a balance of between $1.1 and $1.3 million. Rum was required to file a Report of Foreign Bank Accounts and Financial Accounts, commonly known as an FBAR, but failed to report the existence of the account annually as required by law, and as prompted to do on his annually filed income tax return. Rum was assessed a penalty in the amount of $693,607 pursuant to 31 U.S.C. § 5321(a)(5)(C) and (D), which mandates that the maximum penalty for a willful violation of the reporting requirement be the greater of $100,000 or 50% of the account balance.

Rum seeks to evade responsibility for his actions by moving for summary judgment on two grounds. First, Rum argues that, although within the statutory maximum penalty, the amount of the penalty exceeds the amount permitted by regulation. Rum maintains that regardless of Congress increasing the willful penalty in 2004 in response to the perceived dangers that unreported foreign accounts posed to federal revenue, the penalty is limited to the

1

17398084.1

lower amount specified in the regulation applicable prior to 2004.  Second, Rum argues that the penalty is arbitrary and capricious because the government failed to provide a reasoned explanation for the imposition of a 50% penalty as opposed to a lower amount.

Rum is wrong on both counts.  With respect to the first argument, the plain language of the FBAR statute trumps contrary language in the regulations that implemented the earlier version of the statute.  When Congress amended the statute in 2004 to mandate an increase in the maximum amount of the willful penalty to the greater of $100,000 or 50% of the account balance, the amount imposed against Rum, it legislatively superseded existing contrary regulations.  As such, the amended statute necessarily invalidated existing implementing regulations to the extent they imposed the lower amount applicable under the pre-2004 statute.

With respect to the second argument, it is beyond doubt that both the IRS Examination Division and Appeals Office properly imposed the willful FBAR penalty against Rum based on a well developed administrative record.  That record includes substantial evidence that, at a minimum, Rum is liable for the willful penalty under the applicable objective standard.  Under this standard, at a minimum, Rum acted willfully under both reckless disregard and willful blindness theories because the risks were obvious and Rum consciously avoided learning about his reporting requirement.[1]

That administrative record includes but is not limited to the following findings:  (1) Despite that Rum owned a Swiss bank account at UBS AG for ten years with a balance exceeding $1.1 million, he marked "no" on his federal income tax return each year in response to

---

[1] The objective standard applicable to willfulness determinations is discussed fully in the government's motion for summary judgment.  (DE 31, Section II.)  *Bedrosian v. United States*, Case No. 17-3525 (3rd Cir. December 21, 2018.)

17398084.1

the question as to whether he had a foreign account; (2) Rum failed to report the interest income or gains on his foreign account on his federal tax returns despite that he reported income from his domestic bank accounts;  (3) Rum never obtained professional tax advice on the implications of owning a foreign bank account until after he was advised by UBS AG that his account information had been turned over to the IRS; (4) Rum signed his tax returns under the penalty of perjury, affirming that he had reviewed them, and affirming that they were true and correct but now claims that he signed the returns marked "Self-Prepared" without reviewing them; (5) Rum ignored the explicit instructions on Schedule B of his tax returns explaining his obligation to report his foreign bank account; (6) Rum's UBS AG bank statements contained a notice on the first page advising him that they were being provided to assist him with his federal tax reporting obligations; and (7) Rum was advised by UBS AG in 2002 of his duty to file a Form W-9 with the IRS, but failed to do so.  (Facts at DE 32.)  Any reasonable person in Rum's position would have known or should have known that he had a duty to report his foreign bank account.  The penalty imposed against Rum was not arbitrary or capricious.

Additionally, under well-established binding precedent, Rum waived his right to challenge the amount of the penalty in this Court due to his failure to raise the issue at the administrative level.  Rum never challenged the government's computation of the amount of the FBAR penalty during the examination or on administrative appeal.  Rather, Rum's challenge at the administrative level was limited to his claim that his failure to report his foreign bank account was not willful.  Rum cannot reasonably argue that the government was arbitrary and capricious in assessing a penalty within the statutory limits when he never contested the amount of the penalty during the ample administrative review afforded him.  The rationale for this precedent is

17398084.1

sound and recognizes that a court should only overturn an agency decision when the agency has erred despite that an objection was made during the administrative process. This ensures that the government is given an opportunity to cure any errors it may have made. Having failed to question the *amount* of the penalty during the administrative process other than to seek reduction to the non-willful penalty, Rum cannot raise the issue now.

Finally, as discussed in the government's motion for summary judgment, the abuse of discretion standard applies to the final decision of the agency – not the individual discretion of an agency official. In this case, the administrative record contains ample evidence to support the imposition of the willful FBAR penalty, and the assessment was made within the applicable statutory limits. It necessarily follows that the agency action under review does not constitute an abuse of discretion.

In support of this opposition, the United States relies on the contemporaneously filed Statement of Undisputed Facts ("Facts"). Rum's motion for summary judgment is not well taken, and should be denied accordingly.[2]

## ARGUMENT

I.    <u>The Penalty Assessed Against Rum Is Consistent With the Statute's Intent That the Maximum Civil FBAR Penalty Be 50% of the Unreported Foreign Bank Account And Is Not Prohibited by Regulation.</u>

A.   <u>Statutory Background</u>

In 1986, Congress established the willful FBAR penalty codified at 31 U.S.C.

---

[2] Pursuant to the Case Management and Scheduling Order entered by this Court, absent prior permission a motion for summary judgment "shall not exceed twenty-five" pages. (Order ¶ 6a at DE 13.) Rum exceeds this limit by incorporating by reference the ninety-eight page motion filed by the taxpayer in the FBAR case of *United States v. Colliot*, Case No. 1:16-cv-01281(W.D. Tex.), and attached as Exhibit 1 to his seventeen page motion for summary judgment. To the extent that Rum's motion exceeds the page limitation established by this Court, it is improper and should be stricken on this basis.

17398084.1

§ 5321(a)(5).  From 1986 through 2004, § 5321(a)(5) provided a maximum penalty for a willful

failure to file an FBAR of $25,000 or "an amount (not to exceed $100,000) equal to the balance

in the account at the time of the violation," whichever was greater.  Tracking the maximum

penalty rules in the statute, the regulations during that period also provided for a willful FBAR

penalty "not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in

the account at the time of the violation, or $25,000." 31 C.F.R. § 103.47(g)(2) (1987-1999); 31

C.F.R. § 103.57(g)(2) (1999-2004).

The preamble to the regulations stated the Secretary's intent to "[c]orrect the civil penalty

amount that can be assessed for willful violations of the recordkeeping requirements of this

Part."  52 FR 11436, 11440 (Apr. 8, 1987) ("Discussion of Comments," No. (20)). The preamble

provided further that, "[i]n order to keep the regulations as current as possible, the amendments

to the civil penalty amounts now reflect . . . [the] civil penalties for violations after October 1986

under the Anti-Drug Abuse Act of 1986."  *Id.*  Treasury also declined to "announce a 'safe

harbor' of allowable civil violations of the regulations prior to assessing penalties," explaining

that "Treasury has been given the authority and responsibility to enforce the Bank Secrecy Act,

and *intends to do so to the fullest extent possible*."  *Id.* (emphasis added).

Notably, in enacting the regulation, the Secretary did *not* express any intent to limit its

discretion to assess penalties for willful FBAR violations.  The regulation's sole purpose was to

"reflect" the "civil penalties for violations" of the statute "after October 1986," and accordingly,

it tracked but did not alter the rules for calculating the maximum penalty in the recently amended

statute.  *Id.*  Treasury did not, in any way, implement a regulatory requirement that—

independently of the statute—would limit the Secretary's discretion to assert the maximum

17398084.1

penalty authorized by the statute.  Indeed, in declining to establish the safe harbor that some

commenters requested, the Secretary made clear his intent "to enforce the Bank Secrecy Act . . .

to the fullest extent possible," 52 FR at 11440, which belies the suggestion that Treasury was

trying to limit the broad discretion that Congress had granted it under the statute.

In 2004, Congress substantially increased the penalties for individuals failing to file

FBARs.  For willful violations after October 22, 2004, Congress increased the maximum penalty

to the greater of $100,000 or fifty percent of the account balance.  *See* 31 U.S.C.

§ 5321(a)(5)(C).  The amendment both: (1) discarded the $100,000 upper limit in the earlier

statute, and (2) used half of the account balance (rather than the entire balance) as a factor in

determining the maximum penalty.  *Id.*

Congress increased the penalty ceilings for willful FBAR violations in the 2004 Jobs Act

to encourage individuals to report foreign financial accounts.  Congress had expressed concern

that "there may be hundreds of thousands of taxpayers with offshore bank accounts attempting to

conceal income from the IRS," and it believed "that improving compliance with this reporting

requirement is vitally important to sound tax administration, to combating terrorism, and to

preventing the use of abusive tax schemes and scams."  S. Rep. No. 108-192 at 108 (2003).

Thus, Congress both added "an additional civil penalty for a non-willful act [of] up to $10,000"

and "increase[ed] the pr[ior] law penalty for willful behavior to the greater of $100,000 or 50

percent of the amount of the transaction or account."  H.R. Rep. No. 108-755 at 615 (2004).

The intent of Congress was clear.  In choosing the Senate Amendment (which

"increase[d] the pr[ior]-law penalty for willful behavior") over the original House Bill (which

did not), the Conference Committee made a specific decision to discard the maximum penalties

6

in the prior statute and outdated regulation.  *Id.*  "The Congress believed that increasing the

prior-law penalty for willful non-compliance with [the FBAR] requirement" would "improve the

reporting of foreign financial accounts."  Joint Committee on Taxation, *General Explanation of*

*Tax Legislation Enacted in the 108th Congres*s, JCS-5-05 at 387 (2005).  That objective was

"vitally important to sound tax administration," because "the number of individuals using

offshore bank accounts to engage in abusive tax scams ha[d] grown significantly in recent

years."  *Id.*

     B.  <u>Agencies and Courts Must Give Effect to the Unambiguously Expressed Intent of</u>
        <u>Congress.</u>

     Where, as the case is here, Congress has directly spoken to the precise question at issue

and the intent of Congress is clear, both the agency and the Court "must give effect to the

unambiguously expressed intent of Congress."  *Chevron, USA, Inc. v. Natural Resources*

*Defense Counsel, Inc.*, 467 U.S. 837, 842-843 (1984.)

     When Congress amended the willful FBAR statute in 2004, it clearly and unambiguously

expressed its intent to mandate the increase of the maximum penalty when it stated that the

maximum penalty "shall be increased" to the greater of $100,000 or 50% of the account balance.

*Norman v. U.S.*, 138 Fed. Cl. 189, 196 (2018).  As amended in 2004, 31 U.S.C.

§ 5321(a)(5)(C)(i) provides:

     (C) Willful violations. – In the case of any person willfully violating, or willfully
     causing any violation of, any provision of section 5314 –

     (i) the maximum penalty under subparagraph (B)(i) *shall be increased* to the
     greater of –

     (I) $100,000, or

     (II) 50 percent of the amount determined under subparagraph (D).

17398084.1

(emphasis added.)

Critically, as the Court in *Norman* found, "the amended statute dictates that the usual maximum penalty 'shall be increased' to the greater of $100,000 or 50 percent of the account." *Id*. Given that the language in the willful FBAR penalty amendment is clear, the inquiry ends there, and the Internal Revenue Service, FinCEN, and this Court must give effect to the unambiguously expressed intent of Congress to increase that maximum penalty. *Chevron*, 467 U.S. at 842-43. Because the regulation on which Rum relies, 31 C.F.R. § 1010.820(c)(2), limits the maximum willful FBAR penalty *in every case* to $100,000, it is inconsistent with the mandate of Congress to increase the potential maximum above that amount. It necessarily follows that the regulation upon which Rum now relies was superseded by the FBAR legislation enacted in 2004.

Rum errs in suggesting at page 6 of his motion that *Norman* was wrongly decided because the Court failed to consider changes made to 31 C.F.R. § 1010.820 in 2016. Rum's logic is flawed. As discussed in section C below, the Eleventh Circuit has consistently held that a regulation is invalid to the extent it fails to give effect to the will of Congress. For this reason, the IRS and FinCEN lack the discretion to promulgate any regulation that does not allow for the maximum willful penalty imposed by Congress when it amended the FBAR statute in 2004. Assuming arguendo that either did so, it is of no consequence. The statute trumps the regulation and must be given effect.

This is not to suggest that the government concedes that such discretion was exercised in the first place. For the reasons discussed in section D below, the government does not agree that any discretion was exercised by regulation to limit the amount of the willful penalty to anything

less than the maximum authorized by statute. The point is that, even if such discretion had been exercised, it would be erroneous for this Court to give deference to any regulatory interpretation that does not allow for the maximum penalty mandated by the current, and unambiguous, FBAR statute. As the Supreme Court made clear in *Chevron*, a court may defer to an agency's interpretation only if Congress did not express its intent unambiguously and only if that interpretation "is based on a permissible construction of the statute," neither of which occurred here. *Chevron,* 467 U.S. at 842-843.

In addition to *Norman*, three other courts recently rejected the decision in *United States v. Colliot*, 2018 WL 227181 *3 (W.D. Tex. May 16, 2018) on which Rum relies in arguing that the willful FBAR penalty is limited by regulation to $100,000. In *Kimble v. United States*, 141 Fed. Cl. 373, 388 (2018), the court, citing the Supreme Court decision in *United States v. Larionoff*, 431 U.S. 864, 873 (1977), held that "it is settled law that an agency's regulations must be consistent with the statute under which they are promulgated," and agreed that 31 CFR 1010.820(g)(2) is "no longer valid." To the same end, the court in *Kimble* also found that the fact that regulations "had not been formally withdrawn from the Code of Federal Regulations did not save them from invalidity." *Id*. at 389, citing *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1480 (Fed. Cir. 1997). Following the reasoning in *Kimble*, the United States District Court for the District of Maryland held that 31 C.F.R. § 1010.820(g)(2) cannot be enforced in light of its conflict with 31 U.S.C. § 5321(a)(5)(C)(1) and the more recent IRM provision providing for a willful FBAR penalty in the amount of $100,000 or 50% of the account balance. *United States v. Horowitz*, 2019 WL 265107 *3 (D. Md. January 18, 2019).

The United States District Court for the District of Connecticut is the most recent court to join the tide of cases rejecting *Colliot*, finding that the 2004 statutory amendment abrogated the penalty limits in the earlier regulation:  "The plain language of the 2004 amendment demonstrates Congress's intent to authorize the Secretary to impose higher penalties for willful FBAR violations without the need for additional Treasury regulations, and . . . the old regulation will not bear the freight the Defendants attempt to foist upon it."  *United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at *2 (D. Conn. Feb. 28, 2019).

In light of the unambiguously expressed intent of Congress that the maximum willful FBAR penalty *shall* be increased to the greater of $100,000 or 50% of the account balance, this Court should find that the regulation that previously limited the penalty to a maximum of $100,000 has been legislatively superseded.

C. To Be Valid a Regulation Must Be Consistent With the Governing Statute.

A regulation cannot trump the plain language of the statute it implements.  In order to be valid, regulations must be consistent with the statute under which they are promulgated.  Where a regulation and statute conflict, the more specific and authoritative words in the statute govern. *Pittsburg & Midway Coal Mining v. Director, OWCP*, 508 F.3d 975, 981 (11th Cir. 2007.)  To the extent a regulation is inconsistent with the plain language of a statute, it is invalid. *Larionoff*, 431 U.S. at 873.  This same rationale applies to the extent that a regulation is invalidated by a subsequent contrary legislative enactment. *State of Georgia Department of Medical Assistance v. Heckler*, 768 F.2d 1293, 1299 (11th Cir. 1985).

Rum's reliance on 31 C.F.R. § 1010.820(g)(2) to limit the willful FBAR penalty to a maximum of $100,000 violates the well-established rule of law establishing the primacy of a

10

statute over its implementing regulation.  Section 1010.820(g)(2) provides that the civil penalty

is "not to exceed $100,000."  That regulation is in direct conflict with the Congressional mandate

that the maximum penalty *shall* be increased to the greater of $100,000 or 50% of the account

balance.  Because § 1010.820(g)(2) is inconsistent with the statute, it is a nullity.  *See Legal*

*Environmental Assistance Foundation, Inc. v. United States Environmental Protection Agency*,

118 F. 3d 1467, 1473 (11th Cir. 1997).  For this reason, this Court should find that

§ 1010.820(g)(2) was superseded by the 2004 FBAR statutory amendment and is no longer in

force and effect.

### D.   The Secretary Never Exercised Discretion to Reduce the Penalty Ceiling.

At the time § 1010.820(g)(2) was adopted, the statutory maximum penalty was $100,000.

Far from setting a discretionary limit below the statutory maximum, the regulation set forth the

exact same amount.  Indeed, the Secretary indicated in adopting the regulation that he intended

to enforce the Bank Secrecy Act "to the fullest extent possible." *Amendments to Implementing*

*Regulations Under the Bank Secrecy Act*, 52 FR 11436-01, at 11440 (1987). To that end, the

regulation mirrored the existing statute, including its idiosyncratic use of a parenthetical.

*Compare* 31 C.F.R. § 103.47(g)(2) ("the amount (not to exceed $100,000)"), *with* 31 U.S.C.

§ 5321(a)(5) ("the amount (not to exceed $100,000)"); *see also* 52 FR at 11440 (noting a purpose

to "reflect" the then-existing "civil penalties for violations").

Such a "parroting regulation" is not an exercise of discretion. That is because an agency

does not exercise its discretion "when, instead of using its expertise and experience to formulate

a regulation, it has elected merely to paraphrase the statutory language." *See Gonzales v. Oregon*,

546 U.S. 243, 257 (2006). Where, as here, an agency's regulation simply restates a statute's

terms, "the agency has left the statute as it found it, adding nothing material to Congress's language and providing nothing of its own in which to ground an interpretation to which a court might defer. *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1135 (D.C. Cir. 2014) (analyzing *Gonzales*).

In light of this, *Colliot* and *Wadham*, the only cases that follows *Colliot*'s reasoning, give the regulation unwarranted significance.  *See Colliot*, 2018 WL 2271381, at *2 (calling the regulation an attempt to "cabin" statutory "discretion"); *United States v. Wahdan*, 325 F. Supp. 3d 1136, 1139 (D. Colo. 2018) ("[I]n the exercise of statutory discretion, the Secretary limited the penalties that the IRS could impose to $100,000 . . . ."). The regulation merely parroted the statute without any analysis or deviations. As a result, it cannot form the basis for construing any agency intention to impose a lesser penalty cap than the one mandated through statutory amendment.

Nor does the failure to repeal a regulation save it from a conflicting statute. In *Heckler*, the Eleventh Circuit confronted a regulation that became obsolete in light of an intervening statute. The Court concluded that "even if the regulation were applicable to the situation at hand, it can have no effect in the face of a subsequent contrary legislative enactment." 768 F.2d at 1299; *see also Barseback Kraft AB v. United States*, 121 F.3d 1475, 1480 (Fed. Cir. 1997) ("The fact that DOE's Enrichment Criteria had not been formally withdrawn from the Code of Federal Regulations does not save them from invalidity."); *Horowitz*, 2019 WL 265107, at *3 (citing *Barseback*); *Kimble*, 2018 WL 6816546, at *15 (same).

Moreover, even if the Secretary could impose a lower ceiling, it would require action to do so. That is because, in light of the 2004 statutory amendment, such a change would constitute

17398084.1

a "new substantive rule" subject to notice-and-comment requirements under the Administrative Procedure Act. *See Lane v. Salazar*, 911 F.3d 942, 949 (9th Cir. 2018). As part of that, the Secretary would have needed not only to provide notice and an opportunity to comment, but also an explanation for why he wanted to depart from the statutory maximum. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203-04 (2015). None of that happened here. That only confirms the obvious: the Secretary never acted to lower the maximum penalty.[3]

> E.   The Secretary's Actions Show That the Lower Penalty Regulation Was No Longer in Effect.

Six months before the Treasury renumbered 31 C.F.R. § 103.57 to 31 C.F.R. § 1010.820, it proposed changes to certain Bank Secrecy Act regulations that "would require changes to the instructions to the FBAR." Notice of Proposed Rulemaking, 75 FR 8844, 8849 (Feb. 26, 2010). The proposed draft instructions stated:

> A person who willfully fails to report an account or account identifying information may be subject to a civil monetary penalty equal to the greater of $100,000 or 50 percent of the balance in the account at the time of the violation. See 31 U.S.C. § 5321(a)(5).

---

[3] In fact, the penalty cap in § 1010.820(g)(2) for willful FBAR violations has never been subject to notice-and-comment rulemaking. In that respect, *Colliot* contained a factual error. 2018 WL 2271381, at *2 ("And § 1010.820—a regulation validly issued by the Treasury via notice-and-comment rulemaking . . . ."). The notice of proposed rulemaking did not include a regulatory cap on willful FBAR penalties. *See* Amendments to Implementing Regulations; the Bank Secrecy Act, 51 Fed. Reg. 30233-01 (Aug. 25, 1986). Rather, that cap was added only as part of the final rule (52 Fed. Reg. at 11446) and was therefore not itself subject to public comment. The penalty cap's failure to undergo this process prior to 2004 is hardly surprising because, as a mere repetition of the then-existing statutory language, it was not a substantive provision that required notice-and-comment rulemaking. Instead, "it was, at most, an interpretive rule; it "d[id] not have the force and effect of law," *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015), and it vested no rights in account holders." *Garrity*, 2019 WL 1004584, at *3. After the 2004 statutory amendment, "[i]f the Secretary wanted to categorically limit his discretion to impose FBAR penalties above $100,000 after Congress conferred such authority on him by statute, he could do so, if at all, only through notice and comment rulemaking under the Administrative Procedure Act, clearly indicating his intent to surrender by regulation some of the authority Congress has bestowed on him. . . . It is undisputed that he has not taken such a step." *Id.* at *5 (internal citations omitted).

17398084.1

*Id.* at 8854.  The proposed draft instructions make clear the Treasury's view—*before* it reorganized the regulations—that § 5321(a)(5) of the statute (and *not* 31 C.F.R. § 103.57) governed the maximum penalty for a willful FBAR violation.  Even earlier, in July of 2008, while acknowledging in the Internal Revenue Manual that "the regulations at 31 C.F.R. § 103.57 ha[d] not been revised to reflect the change in the willfulness penalty ceiling," the IRS stated unequivocally that "the statute is self-executing and the new penalty ceilings apply." I.R.M. § 4.26.16.4.5.1 (07-01-2008) (IRM 4.26.16 at DE 31-21.)  Thus, both Treasury and the IRS consistently applied the penalty ceilings under the statute to willful FBAR violations, even though those ceilings were higher than those in the obsolete regulation.  And, as the Treasury explained when it reorganized the Bank Secrecy Act regulations, it was not making any substantive changes when renumbering the regulations.[4]  The outdated regulation became obsolete when Congress amended the statute in 2004.

II.   Rum's Challenge to the Amount of the Penalty Assessed by the IRS Is Unwarranted.

A.   Rum Waived His Right to Challenge the Amount of the Penalty by Failing to Raise the Issue at the Administrative Level.

It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review.  *Hensley v. United States*, 292 F. Supp. 3d 399, 409 (D.D.C. 2018.)  As enunciated by the Supreme Court, "simple fairness" requires that "generally a court should not topple over administrative decisions

---

[4] Because the renumbering of the regulation was ministerial, rather than substantive, the Treasury rejected "all comments . . . that requested a substantive change, or would result in a substantive change," as "outside the scope of th[e] rulemaking." *See* Final Rule, 75 FR 65806 at 65807 (Oct. 26, 2010).

17398084.1

unless the administrative body has not only erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 39 (1952); *Vidiksis v. E.P.A.*, 612 F.3d 1150 , 1158-59 (11th Cir. 2010).  In reaching this conclusion, the Court noted that "orderly procedure and good administration require that objections to the proceeding of an administrative agency be made while it has an opportunity for correction in order to raise issues reviewable by the courts." *Id.*   For this reason, where an argument is not raised in a timely fashion before an administrative agency, it is forfeited and may not be heard by a court reviewing the administrative action. *See Soundexchange, Inc. v. Copyright Royalty Board, et al.*, 904 F.3d 41, 61 (D.D.C. 2018).  There are numerous policy reasons underlying this exhaustion requirement, including permitting the agency an opportunity to exercise its discretion or apply its expertise. *See Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005.)

The seminal events related to Rum's appeal to the IRS Appeals Office from the willful FBAR penalty assessment proposed by the IRS Examination Division are set forth in the government's contemporaneously filed Statement of Undisputed Facts, as well as the Declaration of Marjorie Kerkado filed in support of the government's motion for summary judgment.  (DE 31-10.)  As set forth therein, Rum was provided with a Form 886-a Explanation of Items when the Examination Division proposed the willful FBAR penalty assessment against him.  A copy of the Form 886-a is attached as Exhibit B to Revenue Agent Kerkado's declaration.  (DE 31-10.) The Form 886-a contains a nine page narrative detailing the factual and legal basis for the proposed assessment.  Page 9 of the document advises Rum that a penalty in the amount of $693,607 had been proposed pursuant to 31 U.S.C. § 5321(a)(5)(C) & (D), and states that the statute sets the penalty at the greater of $100,000 or 50% of the account balance.

17398084.1

By letter dated June 3, 2013, the Examination Division explained to Rum the process by which he could request an appeals conference to protest the proposed assessment if he did not agree with it.  The letter, IRS Form 3709, advised Rum, among other things, that he would be required to provide the IRS with "an explanation of why you contest those penalties."  (Facts ¶ 4.)

In response, Rum's legal counsel sent a letter to Revenue Agent Kerkado dated July 2, 2013, requesting an appeals conference but neglecting to provide any explanation as to why Rum contested the penalties.  The letter merely stated that Rum was requesting that the penalty be reduced to the $10,000 non-willful penalty.  (Facts ¶ 5.)

Group Manager Terry Davis responded to counsel's letter by letter dated July 23, 2013, noting that no protest had been submitted but advising Rum that despite this omission his case would be sent to appeals based on a letter Rum previously submitted dated November 23, 2011 and the argument he had consistently made during the examination.  Rum's only argument during the examination was that his failure to file the report was not willful.  No argument was made challenging the government's ability to impose a 50% penalty against Rum if he were found willful or that the amount assessed for a willful violation was otherwise arbitrary, capricious, or an abuse of discretion.  (Facts ¶ 6.)

Based on the substantial evidence of willfulness described in her Appeals Case Memorandum, Appeals Officer Svetlana Wrightson sustained the 50% willful penalty proposed by the Examination Division.  (Facts ¶¶ 7 and 8.)

The administrative record demonstrates that neither Rum nor his legal counsel ever offered the IRS an explanation as to why the willful FBAR penalty should be assessed against

17398084.1

Rum in an amount less than the statutorily authorized maximum.  Rather, Rum's argument

during the entire examination and appeal process was solely that he was not willful.  Because

Rum failed to raise any objection during the examination or on administrative appeal that would

have afforded the IRS the opportunity to cure any alleged error as to the amount of penalty for a

willful violation, he has waived his right to seek judicial review of that issue.  As such, it is

improper for this Court to consider Rum's argument that the IRS abused its discretion in failing

to provide him with an explanation as to why the willful penalty was not imposed in an amount

less than 50% of the account balance.

      B.  <u>Applicable IRS Guidelines Support the 50% Penalty Assessed Here</u>.

      Even if Rum had raised the amount of the penalty as an issue at the administrative level,

it is plain that Rum was not entitled to a lower willful penalty amount under the applicable IRS

guidelines.  The Internal Revenue Manual sets forth the factors to be considered by the

examining agent in determining the proper amount of a willful FBAR penalty.  The applicable

provision, IRM Exhibit 4.26.16-2, provides that the maximum 50% penalty applies in a Level IV

case such as the one at issue here (a Level IV case exists where the account balance exceeds

$1,000,000).  (IRM at DE 31-21 p. 28.)  The IRM provides only one exception to the application

of the maximum penalty in a Level IV case.  A revenue agent with the written concurrence of her

manager may propose a lesser penalty, but only if her workpapers document that the taxpayer

satisfies the four elements required for mitigation, including that "the IRS did not determine a

fraud penalty for an underpayment of income tax for the year in question."  (IRM at DE 31-21 p.

27.)  But as Rum admitted in his Tax Court Petition and as determined by Revenue Agent

Kerkado on the FBAR lead sheet she prepared, the IRS proposed a fraud penalty for year 2007;

therefore, Rum did not meet the criteria for mitigation and was not eligible for a reduction from

the maximum penalty.  (Tax Court Petition, ¶ 7 at DE 31-11; Facts  ¶ 13.)

Thus, if Rum had challenged the amount of the willful penalty during his administrative

appeal, the Appeals Officer would have explained that:  (1) he was subject to a mandatory 50%

penalty because his account balance exceeded $1,000,000; and (2) he was ineligible for

mitigation under the applicable guidelines due to the civil fraud penalty determined on

examination of his 2007 income tax return.  But because Rum never raised this issue during the

administrative review process, it does not constitute an abuse of discretion for the IRS to simply

explain in the Form 886-a provided to Rum that he had been assessed a 50% penalty pursuant to

31 U.S.C. § 5321(a)(5)(C) and (D).

Rum's reliance on the case of *Moore v. United States*, 2015 WL 4508688 (W.D. Wash.

July 24, 2015), to support the argument that he was entitled to a better explanation than that

provided is not well taken.  *Moore* is distinguishable from the present case in that the Court there

found that the administrative record then before it "contain[ed] no explanation of the IRS's

decision to impose the penalties," leaving the Court to "guess as to whether the IRS considered

relevant factors or made a clear error of judgment."  *Id*. at *9.  In the present case, there is ample

evidence in the administrative record to show that the IRS imposed the willful FBAR penalty

against Rum based on substantial evidence that Rum knew or should have known of his duty to

file an FBAR, including the facts set forth in the Form 886-a Explanation of Items prepared by

Revenue Agent Kerkado and the Appeals Case Memorandum prepared by Appeals Officer

Svetlana Wrightson, and that the facts cited there were sufficiently serious to warrant the penalty

imposed.  (Form 886-a at De 31-10; ACM at Facts Ex. 5.)  This administrative record

demonstrates that the IRS did not act arbitrarily, capriciously, or in abuse of discretion when it imposed the maximum penalty against Rum in the face of his repeated pattern of actions, taken over many years, to avoid disclosure of his foreign bank accounts.

Moreover, the Court in *Moore* did not invalidate the FBAR penalty as Rum now seeks. Rather, the Court provided the government an opportunity to supplement the administrative record to show the basis for the agency's decision – including producing the Appeals Case Memorandum that Rum has already been provided in this action.  *Id*. at *10.  In taking this action, the Court noted that it would be improper under Supreme Court authority for a court to conduct a de novo review of the agency's decision as to the amount of the FBAR penalty.  *Id*. (citing *Florida Power & Light Co. v. Lorion*, 470 U.S. 729,744 (1985).  Here, the administrative record before this Court amply justifies the penalty assessed against Rum.

C. <u>The FBAR Penalty Was Made in Accordance With the Law And Is Not Arbitrary, Capricious, or an Abuse of Discretion.</u>

Although a court has power under the Administrative Procedure Act, 5 U.S.C. § 706, to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," the standard of review is extremely deferential to the action taken by the agency.  *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996).  As such, a court may not substitute its judgment for that of the agency, but rather must determine whether the agency is able to articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.  *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 27, 42 - 43 (1983). Thus, the question before this Court is whether the IRS has made a clear error of judgment in assessing the willful FBAR penalty, a determination that involves examining the reasons for the

agency's decision or the absence of such reasons.  *Judulang v. Holder*, 132 S.Ct. 476, 484

(2011.)

In this case, both the Form 886-a Explanation of Items prepared by Revenue Agent

Kerkado and the Appeals Case Memorandum prepared by Appeals Officer Svetlana Wrightston

explain in detail the factual and legal basis for the IRS's determination that Rum's failure to file

his 2007 FBAR was willful.  (Kerkado Decl. at DE 31-10; Facts ¶ 8.)  Both also state that the

50% penalty was being proposed pursuant to 31 U.S.C. § 5321.   Moreover, the 50% penalty was

imposed in accordance with the policy established in the Internal Revenue Manual for bank

accounts with a balance exceeding $1,000,000.  (Facts ¶ 10; IRM 4.26.16 at DE 31-21.)  Thus,

the decision of the IRS to impose the 50% willful FBAR penalty was well reasoned and

supported by the administrative record.  It necessarily follows that the willful FBAR penalty

assessed against Rum was made in accordance with the law and is not arbitrary, capricious, or an

abuse of discretion.

WHEREFORE, the United States requests that Rum's motion for summary judgment be

denied.

> RICHARD E. ZUCKERMAN
> Principal Deputy Assistant Attorney General
>
> By:    /s/ Mary Apostolakos Hervey
>        Mary Apostolakos Hervey
>        Laura M. Conner
>        Trial Attorneys, Tax Division
>        U.S. Department of Justice
>        P.O. Box 14198
>        Ben Franklin Station
>        Washington, D.C. 20044
>        Telephone: (202) 514-6484
>        Facsimile: (202) 514-9868
>        Mary.Apostolakos.Hervey@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing United States

Opposition to Defendant's Motion for Summary Judgment has been filed this 8th day of March,

2019 with the Court via ECF, which will transmit an electronic copy to all counsel of record.

/s/ Mary Apostolakos Hervey
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, DC 20044

17398084.1