**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**SAID RUM**, )<br>)<br>Defendant. )<br>) | Civil Case No. 8:17-cv-826-T26AEP |

**DEFENDANT SAID RUM'S STATEMENT OF DISPUTED FACTS**
**IN OPPOSITION TO PLAINTIFF UNITED STATES**
**OF AMERICA'S STATEMENT OF UNDISPUTED FACTS**

Defendant Said Rum ("Rum") pursuant to the Court's Case Management and Scheduling Order (D.E. 13[1]) files his Statement of Disputed Facts in Opposition to Plaintiff United States of America's ("Plaintiff") Statement of Undisputed Facts (D.E. 32).

**Facts Rum Disputes That Are Cited By Plaintiff**

1. Rum disputes Plaintiff's ¶2.[2] Rum did obtain an associate's degree (D.E. 31 Ex. 5 at 16:5-24), but it was in hotel technology and *specifically* in "Culinary arts of something" (*Id.* at 16:22; Rum Decl. ¶3), which has nothing to do with taxes or foreign accounts (Rum Decl. ¶4).

---

[1] "D.E." refers to "Docket Entry." Exhibits are referred to as "Ex.__." The exhibit numbers referenced (of documents already in the docket) are those in the docket, not the numbers in Plaintiff's documents, as they do not match. Rum's Declaration is cited as: "Rum Decl. ¶___" and is attached as Exhibit 36. All new exhibits referenced in this document are attached as exhibits to the Rum's Response to Plaintiff's Motion for Summary Judgment.

[2] Rum will refer to the numbered paragraphs in Plaintiff United States of America's Statement of Undisputed Facts in Support of their Motion for Summary Judgment (D.E. 32), as "Plaintiff's ¶___."

2. Rum disputes Plaintiff's ¶3. We do not know if Rum had the position of "manager" and it is not clear that "several" and "a number" is the correct description for the number of businesses owned

3. Rum disputes Plaintiff's ¶4. We do not know that Rum manages the finances in his family.

4. Rum disputes Plaintiff's ¶5. If you read Rum's deposition further than just the paragraph cited by Plaintiff, Rum said that he does not read financial newspapers. D.E. 31 Ex. 5 at 41:5-11. And later in the deposition, Rum said he does not "subscribe or read any financial magazines or publication of any sort." *Id.* at 50:21-23.

5. Rum disputes Plaintiff's ¶7. We do not know that here bank records belonged to Rum, or that the certification was accurate.

6. Rum disputes Plaintiff's ¶9. There is no evidence that Rum was in-person when he signed this document, or that it was Rum who actually signed it.

7. Rum disputes Plaintiff's ¶10. We do not know who checked this box, or whether it was a mistake.

8. Rum disputes Plaintiff's ¶11. We do not know that it was Rum who elected to have his mail held abroad, or whether it was a mistake. It is unclear if there was a fee for this service, and if this was the wording of the service in effect at the time Rum held an account at UBS AG.

9. Rum disputes Plaintiff's ¶12. There are various ways that the IRS Criminal Investigation Division can collect information from a taxpayer under investigation, so having one's mail held is not the only way to obtain this information. And, avoiding

disclosure of his account was not Rum's motive in having his mail held. Rum Decl. ¶11. Thus, Rum objects to Plaintiff's ¶12 as not relevant to whether he was willful.

10. Rum disputes Plaintiff's ¶13. It is unknown whether Rum was in-person for this form. And, it is unclear who checked this box, or whether it was a mistake. It also is unclear if this was the wording in effect at the time Rum held an account at UBS AG.

11. Rum disputes Plaintiff's ¶14. The wording: "evade a potential judgment creditor" is not accurate pursuant to Rum's previous statements. Rum Decl. ¶¶8-10. The amount of the damages is unclear, and the timing of when it was dismissed also is in dispute.

12. Rum disputes Plaintiff's ¶15. Mr. Giordano was not Rum's counsel in the lawsuit; Mr. Giordano was only a business friend whom Rum asked for advice. Rum Decl. ¶7. There is no evidence that Mr. Giordano told him to move the funds specifically to Switzerland. It is unclear what "legal advice" in this context refers to.

13. Rum disputes Plaintiff's ¶16. It is not in dispute that Rum said in his deposition that he opened the account because of a car accident. D.E. 31 Ex. 5 at 42:8-13. In the IRS's Form 886-a it does state that Rum said he was sued because of a slip and fall, but the footnote states that "The real reason for moving the funds remains unclear." Form 886-a, at Bates ADM002262 and footnotes 2-3, at Ex. 3. Nowhere in any of the other memorandums or activity logs does this information exist, so it is unclear where the revenue agent got this information. It is possible there was a mistake made in this write-up due to a misunderstanding because Rum maintains that he never lied to the revenue agents during their discussions. Rum Decl. ¶63. And, Rum insists, as he said in his deposition, that it was a *car accident* that was the source of the lawsuit. *Id.* at ¶9.

14. Rum disputes Plaintiff's ¶17. Plaintiff's cite of "(Rum Dep. 50:21-50:17 at Ex. 5.)" because the numbers go backwards (20-17), and the information referred to is not located near this part of Rum's deposition. Rum relied on his accountant to help with his taxes; he trusted his accountant to know about tax reporting obligations, something Rum did not know much about. Rum Decl. ¶4, 17.

15. Rum disputes Plaintiff's ¶19's claim of "frequent communication between Rum and UBS AG." The contact log with UBS AG states only 38 calls or visits over about eight years (April 20, 2001 to December 11, 2008). D.E. 31 Ex. 7 at Bates UBS00035-41. In no way is an average of less than five calls or visits per year considered a "frequent communication." And, these logs have not been verified.

16. Rum disputes Plaintiff's ¶20. It is unclear that these letters were written by Rum.

17. Rum disputes Plaintiff's ¶21. It is disputed that Rum "dealt exclusively" with Hanno Huber, as he could have communicated with other employees and it was not documented.

18. Rum disputes Plaintiff's ¶22. Referring to Rum as "conservative" cannot be backed up, and the is no evidence that he was the only one who invested the funds in the account, as he said other family members would have a share in the funds. D.E. 31 Ex. 5, 22:23 to 23:1.

19. Rum disputes Plaintiff's ¶23. It is unclear what Rum meant by "very active."

20. Rum disputes Plaintiff's ¶25. It is unclear that Rum ever received this message.

21. Rum disputes Plaintiff's ¶26. It is disputed that this meeting ever took place and, if it did what was discussed. Plaintiff references a footnote on the UBS contact log, however this footnote does not exist. D.E. 31 Ex. 7 at Bates UBS00035.

22. Rum disputes Plaintiff's ¶27. There is no evidence from the record that someone informed Rum of the requirements of this program "in detail." On the contrary, Rum admitted in his tax court petition that he did not understand the QIP correctly, as he thought it meant

> that his and his family's money that was foreign sourced income was not subject to the extent this requirement did apply to him it was only for U.S. source income. In the Taxpayers' mind the QIP Agreement terms were right in line with what his personal injury attorney informed him which was he was to be taxed on foreign income only when the account was closed and the money was brought back to the U.S. or when distributions were made to him. Therefore, based on his understanding of the agreement, and equipped with information given to him by his personal injury attorney, he assumed he was in compliance with QIP and would just be taxed on foreign forced income when the money was brought back to the U.S.

D.E. 31 Ex. 11 at Bates ADM002537.

The facts about the QIP listed in the tax court petition (*Id.*) are not necessarily the facts originally given to Rum. All the tax court petition says is that "Mr. Rum was advised by UBS, that their company entered into an agreement with the Service known as the Qualified Intermediary Program ("QIP")." *Id.* There are no facts to jump to the assumption that Rum was informed of more "detail" about the QIP. Even though the communication log from UBS AG states that Rum was "explained ?QI deemed sales and client fully understood the issues and the implications" (D.E. 31 Ex. 7 at Bates UBS00035), clearly Rum did not understand the QIP, as he did not follow it (D.E. 31 Ex. 11 at Bates ADM002537-38; *see* Rum Decl. ¶¶12-13).

23. Rum disputes Plaintiff's ¶28.  There is no evidence that the QIP was explained to him, and it is clear that Rum did not understand the requirements (see previous paragraph for explanation and citations).

24. Rum disputes Plaintiff's ¶29.  It is unclear that Rum was the one who signed this document, and it was not authenticated.  D.E. 31 Exs. 5-6.  We do not have any information on when or where this document was signed.

25. Rum disputes Plaintiff's ¶30.  It is unclear that it was Rum who executed these agreements.  Also, it is disputed that this was the relevant language at the time Rum had an account at UBS AG.

26. Rum disputes Plaintiff's ¶32.  Even though Rum did state that he did not review the return, he also said that he relied on his tax preparer, George Hershkowicz ("Hershkowicz"), to prepare an accurate return.  D.E. 31 Ex. 5 at 79:14 to 80:4.  And, Rum said he reviewed the page where he signed.  D.E. 31 Ex. 5 at 80:11-12.  Also, Rum misunderstood opposing counsel's question to be asking if he reviewed the return's numbers for accuracy, which he knows nothing about, as he is not a tax professional.  Rum Decl. ¶¶4, 20.

27. Rum disputes Plaintiff's ¶37.  "Steve Mermel Stein" is the man who owned the firm Hershkowicz worked at.

28. Rum disputes Plaintiff's ¶40.  Even though Rum said that he did not review his 2007 return (D.E. 31 Ex. 5 at 97:8-98:22), Rum misunderstood this question to be asking if he reviewed the return's numbers, which he knows nothing about, as he is not a tax professional.  Rum Decl. ¶¶4, 20.

29. Rum disputes Plaintiff's ¶42. There is no evidence that "Rum knew that he should have marked 'yes' in answer to the question of whether he had signature authority over a foreign bank account." In contrast, Rum stated that he believed he had no reporting obligations until the foreign money was transferred to the United States. D.E. 31 Ex. 11 at Bates ADM002538. Therefore, Rum did not know or see that he had to mark "yes" on his Schedule B. Rum Decl. ¶21.

30. Rum disputes Plaintiff's ¶44. Rum states that he did not report his foreign account on his children's FAFSA applications because he thought that when the foreign money came back to the United States, then he would pay tax on it, and he was not prepared to pay tax on the money at that time. Rum Decl. ¶14. Also, he listed the foreign account on the mortgage application because at that time he was willing to bring back the foreign money to the United States and pay tax on it. *Id.* Also, there is no evidence that this meeting took place, and if it did, what was discussed at it.

31. Rum disputes Plaintiff's ¶45 and ¶46. Rum's testimony all along has been that he believed he would report the income from the foreign account when he brought the money back to the United States. D.E. 31 Ex. 5 at 71:2-20. However, he did not report all the gain from the foreign account in 2009 because Alan Gavel explained to him that he was wrong before and this is how it works—you pay tax on the income earned during that year. Rum Decl. ¶30. Gavel prepared the return, and Rum trusted Gavel's opinion. *Id.* Rum choose Gavel as his lawyer because he was an esteemed professor of tax. *Id.* at ¶25Later, it was discovered that Gavel was wrong on how he prepared the return and they were incomplete. Emails Between Kerkado and Gavel (6.6.12) at Bates

ADM003370, at Ex. 13. Rum relied on his professional financial advisor. Rum Decl. ¶¶4, 17, 30.

32. Rum disputes Plaintiff's ¶49. Rum stated that he did not have the document about the John Doe summonses until 2009, not 2008. D.E. 31 Ex. 5 at 62:19 to 64:1. This changes Plaintiff's timeline. As Plaintiff states in ¶49, Rum closed his account with UBS AG on October 30, 2008, which was *before* he received the information about the John Doe summonses. Therefore, it is incorrect to state that Rum closed his account *after* hearing learning about the John Doe summonses, because he stated that he closed it *before* signing that document.

33. Rum disputes Plaintiff's ¶50. These records "claim," the information, they do not "show."

34. Rum disputes Plaintiff's ¶51. There is no evidence that Rum received this letter and it has not been authenticated.

35. Rum disputes Plaintiff's ¶53. There is no evidence that Rum received this notice, and there is no authentication that it was sent.

36. Rum disputes Plaintiff's ¶56. There is no evidence that Rum received this letter, and there is no authentication that it was sent.

37. Rum disputes Plaintiff's ¶56. Plaintiff never asked Rum to file FBARs. Rum relied on his accountant to file all the correct forms. Rum Decl. ¶¶4, 17, 30.

38. Rum disputes Plaintiff's ¶59. There is no evidence that Rum received this notice, and there is no authentication that it was sent.

39. Rum disputes Plaintiff's ¶60. These filing dates have not been authenticated.

40. Rum disputes Plaintiff's ¶61.  Denise Ross did not ask about Rum's foreign accounts. Davis Dep. 103:20-21, at Ex. 7; Memorandum of Interview, Ross (11.22.11) Bates ADM003145-51, at Ex. 9.  "The examiner did not follow up on this offshore account statement."  Form 886-a at Bates ADM002266, at Ex. 3.  Also, all that was relevant to that audit was any accounts open in 2006, and the other information Ross asked for did not include the Arab Bank in Switzerland, which did not exist in 2006.  Memorandum of Interview, Ross (11.22.11) at Bates ADM003145-51, at Ex. 9; Office of Chief Counsel Memorandum (11.19.12) Bates ADM00366, at Ex. 6; Rum Decl. ¶¶23-24. Since the income tax auditor chose not to ask about more years, Rum was not purposefully concealing anything about his accounts.  Office of Chief Counsel Memorandum (11.19.12) at Bates ADM00366, at Ex. 6; Rum Decl. ¶32.  Gavel chose to disclose only the relevant and requested information during the audit.  *See* Memorandum of Interview, Ross (11.22.11) Bates ADM003145-51, at Ex. 9.

41. Rum disputes Plaintiff's ¶63.  Whether Rum was "willful" is an issue for this Court to take up upon review.  There is no evidence that it was a "delegate" who assessed the penalties.

42. Rum disputes Plaintiff's ¶65.  There is no evidence that it was a "delegate" who gave notice.

43. Rum disputes Plaintiff's ¶66.  Rum is not liable for any amount.

44. Rum disputes Plaintiff's ¶67.  This document has not been authenticated.

Dated: March 8, 2019　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ *Venar Ayar*
　　　　　　　　　　　　　　　　　　　　Venar Ayar
　　　　　　　　　　　　　　　　　　　　Ayar Law Group
　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　30095 Northwestern Highway, Suite 102
　　　　　　　　　　　　　　　　　　　　Farmington Hills, MI 48334
　　　　　　　　　　　　　　　　　　　　Phone: (248) 262-3400
　　　　　　　　　　　　　　　　　　　　Fax: (248) 436-8117
　　　　　　　　　　　　　　　　　　　　venar@ayarlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically serve a true and correct copy upon all counsel of record.

/s/ *Venar Ayar*
Venar Ayar
Ayar Law Group
Attorney for Defendant
30095 Northwestern Highway, Suite 102
Farmington Hills, MI 48334
Phone: (248) 537-9447
Fax: (248) 537-9448
venar@ayarlaw.com