UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Civil Case No.  8:17-cv-826-T26AEP |
| **SAID RUM**, | ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Said Rum ("Rum") opposes this action brought by Plaintiff United States of America ("Plaintiff") to acquire the 2007 Report of Foreign Bank and Financial Account ("FBAR") penalties assessed against him under 31 U.S.C. § 5314.  The parties filed motions for summary judgment, oppositions thereto, and a stipulation of agreed material facts.  D.E. 30, 31, 32, 55, 56, 58, 59.[1]  Rum, through his counsel, now files his reply in support of his motion for summary judgment.

Rum's First Motion for Summary Judgment (D.E. 30) and his Response in Opposition to Plaintiff's Motion for Summary Judgment (D.E. 58) show that there is no genuine dispute as to any material fact for trial.  Fed. R. Civ. P. 56(a), (c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Plaintiff does not dispute Rum's statement of undisputed facts (D.E. 30 Ex. 2), and thus Rum asks that the Court deem all facts listed as admitted.  The undisputed material facts before this Court show that: there is no material issue of disputed

---

[1] "D.E." refers to "Docket Entry." And, "Ex.__" refers to exhibits.  The exhibit numbers used are those in the docket.

1

fact as to whether Rum was willful with respect to his failure to properly disclose his interest in a foreign financial account. Furthermore, there is no material issue of fact as to whether the assessment and amount of the penalty was arbitrary, capricious, or an abuse of discretion. Thus, Rum asks that this Court grant Rum's summary judgment request.

**I. FBAR Regulation vs. Statute**

First, Plaintiff maintains that 31 U.S.C. § 5321(a)(5)(C) controls verses the regulation 31 C.F.R. § 1010.820(g)(2).[2] D.E. 55 at pp.2, 6. However, Plaintiff is wrong and fails to recognize that 31 C.F.R. § 1010.820(g)(2) is binding on this Court. *See* D.E. 30 at pp.6-9.

Plaintiff is correct that the intent of Congress controls (D.E. 55 at p.7), and Congress showed its intent when it amended 31 C.F.R. § 1010.820(g)(2) in 2016 and it chose to not change the limit of FBAR penalties. D.E. 30 p.7. And, 31 C.F.R. § 1010.820(g)(2) does not limit the FBAR penalty in *every* case, as Plaintiff states (D.E. 55 p.8); rather, 31 C.F.R. § 1010.820(g)(2) involves willful violations "committed after October 27, 1986," "a violation of § 1010.350 or § 1010.420," which is highly specific.

Rum does not contest that 31 U.S.C. § 5321(a)(5)(C) was amended in 2004 (D.E. 55 p.6). However, Plaintiff *ignores* the 2010, 2011, and 2016 amendments to 31 C.F.R. § 1010.820(g)(2), which occurred *after* amendments to 31 U.S.C. § 5321. D.E. 30 at pp.6-9.

> [I]n 2010 FinCEN reissued the BSA regulations under Chapter X of Title 31, Subtitle B (issued through notice-and-comment rulemaking procedures) and expressly chose not to adopt any substantive changes to the FBAR compliance obligations and corresponding civil penalties provisions. *See* 75 Fed. Reg. 65806, at 65807 . . . , preamble excerpt). Next, in 2011, FinCEN amended the BSA regulations regarding FBARs (again issued through notice-and-comment rulemaking procedures). *See* 76 Fed. Reg. 10234 . . . . Despite extensive substantive changes to the regulations, no change was

---

[2] Rum is not relying on 31 C.F.R. § 1010.820(**c**)(2), as Plaintiff claims. D.E. 55 at p.8.

> made to the FBAR penalty provisions contained in 31 CFR §103.57 (prior to renumbering as 31 CFR § 1010.820).
>
> In 2016, FinCEN amended 31 CFR § 1010.820 *which is the specific regulatory section dealing with FBAR penalties*. 81 Fed. Reg. 42503 . . . . This amendment added subsection (i) to § 1010.820 to state "For penalties that are assessed after August 1, 2016, see §1010.821 for rules relating to the maximum amount of the penalty." In turn, § 1010.821 provides that the willful FBAR penalty imposed under 31 U.S.C. § 5321(a) shall be adjusted for inflation. "Multiplying the current maximum penalty amount of $100,000 by the inflation factor of 1.24588 results in an inflation-adjusted maximum penalty amount of $124,588, when rounded to the nearest dollar." *Id*. at 42504.

D.E. 30 at p.7.

Additionally, Courts have held that 31 C.F.R. § 1010.820(g)(2) still is in force. D.E. 30 at p.6. The cases cited to by Plaintiff (D.E. 55 at pp.9-10) that go for the proposition that United States v. Colliot, No. AU-16-CA-01281-SS (W.D. Tex. May 17, 2018), no longer is valid law are <u>not</u> binding on this Court, as they are not from this district. *See* D.E. 30 at p.6; D.E. 58 at p.13. In addition, several other cases not mentioned by Plaintiff have followed *Colliot*: United States v. Wadhan, 325 F. Supp. 3d 1136, 1141 (D. Colo. 2018); United States v. Shinday, 120318 CACDC, 2:18-cv-06891-CAS-Ex (D.C. Cal. Dec. 3, 2018) (failing to overturn *Colliot* and *Wahdan*, rather the Court limited the penalties that 31 C.F.R. § 1010.820 applies to as only the yearly penalties). *See also* D.E. 30 at p.6; D.E. 58 at p.13.

Plaintiff is suggesting that 31 C.F.R. § 1010.820(g)(2) and Congress' amendments to it in 2016 are not valid because the regulation is not consistent with the statute. D.E. 55 p.10. However, the plain language controls and 31 C.F.R. § 1010.820(g)(2) is unambiguous:

> (**g**) For any willful violation committed after October 27, 1986, of any requirement of § 1010.350, § 1010.360 or § 1010.420, the Secretary may assess upon any person, a civil penalty:
> . . .

3

> **(2)** In the case of a violation of § 1010.350 or § 1010.420 involving a failure to report the existence of an account or any identifying information required to be provided with respect to such account, a civil penalty not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000.

Contrary to what Plaintiff claims, there is no reason to believe that 31 U.S.C. § 5321(a)(5)(C) superseded or invalidated 31 C.F.R. § 1010.820(g)(2);

> [i]nstead, § 5321(a)(5) vests the Secretary of the Treasury with discretion to determine the amount of the penalty to be assessed so long as that penalty does not exceed the ceiling set by § 5321(a)(5)(C). . . . And § 1010.820—a regulation validly issued by the Treasury via notice-and-comment rulemaking—purports to cabin that discretion by capping penalties at $100,000. 31 C.F.R. § 1010.820. Thus, considered in conjunction with § 5321, § 1010.820 is consistent with § 5321's delegation of discretion to determine the amount of penalties to be assessed. *See U.S. Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 272 (5th Cir. 1979) ("Regulations are presumed valid unless they are shown to be unreasonable or contrary to the provisions of the enabling statute."). Since § 1010.820 can be applied consistent with § 5321(a)(5), the Court concludes § 5321(a)(5) does not implicitly invalidate or supersede § 1010.820.

United States v. Colliot, 051718 TXWDC, AU-16-CA-01281-SS (W.D. Tex. May 17, 2018).

Thus, since the statute allows for a penalty *up to 50%* and the regulation allows for a penalty *maximum of $100,000*, the regulation is *in the range* of the statute. Thus, both the regulation and the statute can apply at the same time without conflict.

Plaintiff suggests that Congress did not exercise discretion, and that the amendments to 31 C.F.R. § 1010.820(g)(2) were merely "parroting" 31 U.S.C. § 5321(a)(5). D.E. 55 at pp. 9, 11. However, as stated above, the Secretary reissued the regulation in 2010, which is during the examination of Rum's case and thus relevant to this litigation. And, at the time of this reissuance, the language of 31 C.F.R. § 1010.820(g)(2) did not match the post-2004 31 U.S.C. § 5321(a)(5) (the current language of the statute), as Plaintiff points out (D.E. 55

p.11). Thus, Plaintiff's argument that the Secretary did not exercise discretion when it reenacted the regulation is unfounded. "If FinCEN had wanted to exercise its Congressionally-delegated discretion to increase the FBAR penalty maximum (beyond the inflation adjustment made in 2016), it had **ample opportunity to do so during the multiple amendments made to the BSA regulations as described above. Its silence in this regard is telling**." D.E. 30 at p.9.

In addition, FinCEN made its amendments to the regulation in 2010, 2011, and 2016 using notice-and-comment rulemaking procedures, since the legislature took comments on the amendments. *See* D.E. 30 at pp.7-8 and accompanying Ex. 18 at 65806, Ex. 19 at 10235, Ex. 20 at 42503-04.[3]

Plaintiff cites to a notice and the Internal Revenue Manual ("IRM") to show the Treasury and Internal Revenue Service ("IRS") do not apply 31 C.F.R. § 1010.820. However, Plaintiff fails to mention that "as recent as 2012 the IRS directly cited to 31 CFR § 1010.820 as authority for assessment of FBAR penalties in connection with the redelegation of such authority within the ranks of its own agency. *See* Delegation Order 25-13, ¶¶ 2 & 38 (effective April 11, 2012)." D.E. 30 p.9.

Plaintiff chooses to gloss over the above facts because it admitted that it did not use 31 C.F.R. § 1010.820(g)(2) in assessing Rum's penalty. D.E. 30 at p.5. The regulation acts to limit the maximum penalty, but it is within the range of the statute and the Court must give

---

[3] The government is saying is that the regulation does not have the force of law. D.E. 55 at p.13 FN 3. But the fact that the regulation has not changed cannot be ignored by speculation about what the Secretary intended. The $100,000 cap on penalties still is in force as of this reply. 31 C.F.R. § 1010.820(g)(2). Plaintiff is speculating that the Secretary does not want this penalty maximum to be used, and Rum is assuming that if the Secretary did not change the regulation, then it is happy with it.

it full effect, thus limiting the maximum penalty against Rum to $100,000.00 under 31 C.F.R. § 1010.820(g)(2). In summary, 31 C.F.R. § 1010.820 is a valid regulation and sets the maximum penalty for willful FBAR violations to $100,000 and notice-and-comment has not repealed it as of this motion. *See* United States v. Colliot, 051718 TXWDC, AU-16-CA-01281-SS (W.D. Tex. May 17, 2018). Thus, Plaintiff acted arbitrarily and capriciously when it chose to not apply an existing, binding regulation when assessing the penalty against Rum. 5 U.S.C. § 706(2) (requiring agency action to be "in accordance with law"); Accardi v. Shaughnessy, 74 S.Ct. 499, 347 U.S. 260, 267, 98 L.Ed. 681 (1954).

**II. Challenge to Penalty Amount**

    **A. Appeals Protest**

Rum clearly challenged the amount of the penalty at the Appeals level. Rum's appeals protest specifically states: "Seeking the discretionary Assessment whereby the Penalty cannot exceed $10,000.00)." D.E. 58 Ex. 27 at Bates ADM000233. Rum contested the amount assessed and argued that Plaintiff should have charged Rum less. If this is not an appropriate protest of the penalty, then Rum does not know what is. Despite this protest, Group Manager Terry Davis chose to send Rum's case to FBAR Appeals based on a previous letter (D.E. 59 ¶6), rather than the actual protest he sent in. The IRS had no right to ignore Rum's actual protest and say his argument was not sufficient, but then turn around and allow him to proceed to Appels under the same arguments.

Rum attended the FBAR Appeals meeting and his primary argument was that Plaintiff wrongfully took away the originally proposed 20% penalty and the penalty should not be 50%, but rather no more than 20%. D.E. 58 Ex. 1 at ¶106. This clearly gave notice to

6

the IRS that Rum was protesting the amount of the penalty. There is ample evidence that Marjorie Kerkado ("Kerkado") made a 20% offer. D.E. 58 Ex. 1 at ¶¶30-32, 34, 102, 106-08, 110-11. The Appeals officer even acknowledges in her in activity log that Rum made this argument at the Appeal (D.E. 58 Ex. 1 at ¶111), so clearly Plaintiff knew of Rum's dispute of the penalty amount. Rum is more than specifically referring to the amount of the penalty assessed and giving his explanation as to why he contested it. Rum clearly believed and voiced that Plaintiff should assess him less than the statutory maximum, as Kerkado previously offered it to him, and he argued this much. Thus, Rum raised a proper objection and therefore this Court should afford him the opportunity for review of the agency's decision.

### B. IRS Guidelines

Plaintiff is right to point out that the IRM mitigation guidelines are of issue in this case. D.E. 55 pp.17-18. However, Plaintiff is wrong to state that the mitigation guidelines did not apply here. The examiner *proposed* a fraud penalty, but it was not ultimately *sustained*, as is the IRM's requirement. D.E. 58 Ex. 1 ¶¶74, 78. Plaintiff for some reason believes that the requirement is that a fraud penalty be "proposed," as it has stated this word multiple times. D.E. 55 pp.17-18; D.E. 58 Ex. 1 ¶78. Yet, that is not true—a fraud penalty was <u>not</u> *sustained* against Rum. Thus, Rum met the mitigation guidelines (D.E. 58 Ex. 1 ¶¶74-78), and IRS Examiner Kerkado got approval of a lesser penalty (as required under the IRM, D.E. 55 at p.17) from her manager (D.E. 58 Ex. 1 ¶¶85-86). Thus, Plaintiff should have used discretion and given Rum a lower penalty, as he met the mitigation guidelines.

In addition, Rum <u>did</u> challenge the amount of the willful penalty during his Appeal, as explained above, and therefore Plaintiff should have afforded Rum a proper explanation, as Plaintiff points out (D.E. 5 p.18-19). The record *before this litigation* is bare as to the reasons for the imposed penalty. Even if Plaintiff now has provided more evidence to attempt an explanation as to why it imposed a 50% penalty (*see* D.E. 55 at p.19), Rum still argues that this is not enough. The government cannot come up with new facts to support an administrative decision that clearly did not rely on those facts. There is nothing in the administrative record that supports the reasons for the imposed penalty and, of course, Plaintiff did not give Rum reasons to support the proposed penalty. Plaintiff cannot bring up new facts never considered by the IRS to justify its reasoning on the penalties in hindsight. Additionally, the methods used by Plaintiff did not follow the applicable laws. D.E. 30, D.E. 58.

Plaintiff claims "that both the IRS Examination Division and Appeals Office properly imposed the willful FBAR penalty against Rum based on a well developed administrative record." D.E. 55 at p.2. Rum contests that there is ample evidence in the record as to the explanation for the penalty imposed. Plaintiff cites to many facts as to why Rum was allegedly willful, and it claims all those facts explain why it imposed a 50% penalty (D.E. 55 motion and Ex. 1). However, this is not true because when looking at the Appeals Case Memorandum, clearly Plaintiff believed Rum did not qualify for mitigation and that was the reason it charged Rum a 50% penalty. D.E. 30 Ex. 29 at p.9. Thus, all the facts stated by Plaintiff are not the reason it gave Rum the maximum 50% penalty. By saying that Rum did

not qualify for mitigation, Plaintiff is admitting that it did not look at these facts in considering the penalty imposed, since its analysis ended there.

Plaintiff wrongfully concluded Rum did not qualify for mitigation, as discussed above, and the FBAR examiner, according to the IRM, is "expected to exercise discretion, *taking into account the facts and circumstances of each case*, in determining whether penalties should be asserted and the total amount of penalties to be asserted." D.E. 58 Ex. 1 ¶48 (emphasis added). And, Plaintiff states that it imposed Rum's penalty in accordance with the IRM (D.E. 55 p.20), so why should this Court allow Plaintiff to apply only some of the applicable IRM provisions? Plaintiff cannot pick and choose which IRM provisions it must follow. Once it admits that it must follow the IRM, it should have to follow all relevant IRM provisions. The Examiner already admitted that she did not use discretion in this case (D.E. 58 Ex. 1 ¶59), and Plaintiff admitted in its response that it did not use discretion (D.E. 55 p.18). Thus, Plaintiff has indirectly admitted that it failed to take all facts into consideration because it made an incorrect conclusion about Rum not qualifying for mitigation.

The Form 886-a Explanation of Items explains in detail the determination for willful but does not state anything about mitigation. D.E. 58 Ex. 5. Thus, this is not an explanation as to *why* Plaintiff imposed a 50% penalty. And, the Appeals Case Memorandum mentions mitigation, but Plaintiff did not provide this document to Rum until this litigation. D.E. 58 Ex. 1 ¶¶119-21. Plaintiff in effect is admitting that it did not take any of the cited facts into consideration (and thus did not follow the IRM) because Rum did not qualify for mitigation.

Plaintiff states that both the reckless disregard and willful blindness theories are applicable in this case (D.E. 55 p.2) but does not argue that the intentional disregard standard is inapplicable, as Rum argues for (D.E. 58 pp.3-4). Plaintiff also does not contest Rum's argument as to the standard of review for willfulness. D.E. 58 pp.2-3.

Plaintiff argues that the abuse of discretion standard applies to the final agency decision, which Rum does not contest. D.E. 55 at p.4. However, all decisions leading up to the final Appeals-level decision are part of this final decision and this Court must consider them. D.E. 58 p.8.

In conclusion, the Examiner did not exercise discretion here, which only this Court can fix. Thus, this Court must throw out the whole penalty assessment, since this Court cannot "substitute its judgment for that of the agency," as Plaintiff points out. D.E. 55 p.19. Additionally, Rum maintains that Plaintiff did not provide an explanation as to the reason for the penalty amount, as required under Moore v. U.S., 2015 WL 4508688, at *1 (W.D. Wash. July 24, 2015). *See* D.E. 30 pp.12-16.

## CONCLUSION

WHEREFORE, Rum requests that the Court enter summary judgment in his favor.

Dated: March 27, 2019                                   Respectfully submitted,

                                                                                        /s/ *Venar Ayar*

                                                                                        Venar Ayar
                                                                                        Ayar Law Group
                                                                                        Attorney for Defendant
                                                                                        30095 Northwestern Highway, Suite 102
                                                                                       Farmington Hills, MI 48334
                                                                                       Phone: (248) 262-3400
                                                                                       Fax: (248) 436-8117
                                                                                       venar@ayarlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically serve a true and correct copy upon all counsel of record.

/s/ *Venar Ayar*
Venar Ayar
Ayar Law Group
Attorney for Defendant
30095 Northwestern Highway, Suite 102
Farmington Hills, MI 48334
Phone: (248) 537-9447
Fax: (248) 537-9448
venar@ayarlaw.com