IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 8:17-cv-826-T26AEP |
| | ) | |
| SAID RUM, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE
## TO DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

The Magistrate Judge correctly recommended, in his Report and Recommendation of

August 2, 2019 (Doc. 71) that the United States' motion for summary judgment should be

granted and that Defendant Said Rum's motion for summary judgment should be denied.

Mr. Rum's objections to the Report and Recommendation fail to undermine the validity of

the Magistrate Judge's conclusions.  Judgment should be entered on behalf of the United

States and against Mr. Rum, as the Magistrate Judge recommends.

## DISCUSSION

As the Magistrate Judge correctly found, the undisputed record establishes that

Mr. Rum willfully failed to report his account at UBS AG in Switzerland for 2007, and that a

penalty in the amount of 50 percent of the account balance was properly assessed against

him.  As to the willfulness determination, Mr. Rum incorrectly argues (in Objections IV and

IX)[1] that a criminal standard of willfulness should have been applied to his civil case.  That

---

[1] Mr. Rum raises nine objections to the Report and Recommendation.

1

17915908.1

argument contravenes well-established authority that "willfulness" entails a different standard in a civil context.  The Magistrate Judge appropriately rejected Mr. Rum's argument and applied the correct civil standard in finding that Mr. Rum acted, at the least, with reckless disregard and willful indifference of his legal obligation to report his foreign bank account.

As to the IRS's determination of the amount of the penalty assessed against Mr. Rum, the Magistrate Judge correctly found that the IRS neither abused its broad discretion nor acted arbitrarily and capriciously in setting the penalty amount.  While the bulk of Mr. Rum's objections are to the Magistrate Judge's findings upholding the amount of the penalty, none of those arguments undermine the Magistrate Judge's conclusions.  Mr. Rum's arguments notwithstanding, the Magistrate Judge correctly: (A) found that the amount of the penalty was not limited by a superseded regulation (Objection II); (B) applied the correct standard of review (Objection III); (C) limited his review to the existing administrative record (Objections I, V, VI and VII); (D) found that the IRS gave sufficient notice and a reasoned explanation for its decision (Objection VIII); and (E) did not make inappropriate findings as to Mr. Rum's credibility (Objection IX).

I.     The Magistrate Judge correctly determined that Mr. Rum willfully failed to report his foreign account.

In Objection IV, Mr. Rum incorrectly argues that a finding of willfulness requires "proof of a disregard of known legal duty."  (Doc. 72 at 7.)  His reliance on *Ratzlaf v. United States*, 510 U.S. 135 (1994), for that proposition is inapposite because *Ratzlaf* involved the alleged violation of a *criminal* statute.  The monetary penalty at issue in Mr. Rum's case is a

2

*civil* penalty, and the Magistrate Judge correctly determined that willfulness in that context "is generally taken [ ] to cover not only knowing violation of a standard, but reckless ones as well."  (Doc. 71 at 16 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)).) Specifically in the context of FBAR penalties, courts have uniformly applied the prevailing civil standard for willfulness, finding that willfulness "may be proven 'through inference from conduct meant to conceal or mislead sources of income or other financial information,' and it 'can be inferred from a conscious effort to avoid learning about reporting requirements.'"  *United States v. Williams*, 489 Fed. App'x 655, 658 (4th Cir. 2012) (quoting *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991)).  As the Magistrate Judge noted (Doc. 71 at 16), "every federal court to have considered the issue has found the correct standard to be the one used in other civil contexts." *Bedrosian v. United States*, No. 2:15-cv-5853, 2017 WL 4946433 at *3 (E.D. Pa. 2017).  Mr. Rum gives no compelling reason to deviate from the well-settled principle that "willfulness" in the civil context means something different than it does in a criminal context.

For that reason, Mr. Rum also is incorrect when he argues as part of his Objection IX that the record "lacks evidence showing that Rum knew he had to file the FBAR report." (Doc. 72 at 20.)  Under the appropriate civil standard, the United States need not show that Mr. Rum subjectively knew of the FBAR reporting requirement.  Reckless disregard of a statutory duty is determined using an objective standard that evaluates whether an action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Bedrosian*, 2017 WL 4946433, at *4 (quoting *Safeco Ins. Co.*, 551 U.S. at 68).  The relevant inquiry is whether the failure to disclose the information was purposeful instead of

3

inadvertent, not whether the taxpayer subjectively believed he was not required to file an

FBAR.  *See Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (finding that after it is

established that a failure to disclose information was done purposefully, whether the filer

believed he was legally justified in withholding the information is irrelevant); *United States*

*v. McBride*, 908 F. Supp. 2d 1186, 1210 (D. Utah 2012) (finding that if subjective intent were

required, every person would be able to escape liability by avoiding learning of the FBAR

reporting requirements).

The Magistrate Judge pointed to numerous undisputed facts showing that Mr. Rum, at

a minimum, acted with reckless disregard of his FBAR obligation and, thus, willfully failed

to report his foreign bank account.  To start, the Magistrate Judge found that a "taxpayer's

failure to review their tax returns for accuracy despite repeatedly signing them, along with

'falsely representing under penalty of perjury' that they do not have a foreign bank account

(by answering 'no' to question 7(a) on Line 7a of Schedule B of a 1040 tax return) in and of

itself supports a finding of 'reckless disregard' to report under the FBAR."  (Doc. 71 at 17

(emphasis removed) (quoting *Kimble v. United States*, 141 Fed. Cl. 373, 376 (2018)).)  As

the Magistrate Judge accurately described, the undisputed facts showed that Mr. Rum fit that

circumstance.  (Doc. 71 at 18-19.)  But the Magistrate Judge did not stop there.  He identified

a variety of additional undisputed facts that lead to the inescapable conclusion that "Rum

meant to conceal his foreign accounts and avoid learning about the FBAR filing

requirement," such as: (1) "Rum admitted that the only reason for opening the UBS account

was to conceal the money from potential judgment creditors;" (2) "Rum also owned a

'numbered' rather than a 'name account' and elected to have his UBS mail withheld abroad;"

4

(3) "UBS sent bank statements to Rum for numerous years explicitly noting that those statements could assist Rum in preparing his US tax returns, and that they do not satisfy government reporting requirements in and of themselves;" and (4) "Rum also admitted that he disclosed the UBS account on his mortgage application to assist him financially," even though he did not report it on his tax returns or FBARs.  (Doc. 71 at 19.)  Later, the Magistrate Judge pointed to other facts supporting this determination, including:  (1) "while UBS advised Rum of the QI deemed sales, and the record reflects that Rum understood his obligations once briefed, Rum failed to provide a W-9 form, effectively concealing his funds from his offshore account from the IRS;" (2) in 2004, Rum signed a document in Switzerland titled "Supplement for New Account US Status" that acknowledged he was liable for U.S. taxes; and (3) despite Mr. Rum's claim that he thought the money did not have to be reported until it was brought back to the United States, he did not report the income earned offshore when it was repatriated in 2009.  (Doc. 71 at 25-26.)  The Magistrate Judge correctly concluded from all those objective factors – none of which Mr. Rum disputes – that Mr. Rum willfully failed to report his foreign bank account and thus was liable for an FBAR penalty.

II.   The Magistrate Judge correctly determined that the IRS did not abuse its discretion in assessing the maximum penalty for a willful violation of the FBAR reporting requirement.

   A.   *The Magistrate Judge correctly found that the amount of the penalty was not limited by a superseded regulation.*

As described in great detail in the Report and Recommendation, the maximum penalty for a willful FBAR violation described in 31 C.F.R. § 1010.820(g)(2) is inconsistent with the higher maximum penalty that Congress established when it amended 31 U.S.C.

5

§ 5321 in 2004; as a result, the Magistrate Judge correctly concluded that the amended statute superseded the penalty limits in the older regulation.  (Doc. 71 at 10-15.)  This is in line with the vast majority of the courts that have considered the issue and the better reasoned decisions.  *See United States v. Schoenfeld*, No. 3:16-CV-1248-J-34PDB, 2019 WL 2603341, at *4 (M.D. Fla. June 25, 2019); *United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at *2 (D. Conn. Feb. 28, 2019); *Norman v. United States*, 138 Fed. Cl. 189, 196 (2018); *Kimble v. United States*, 141 Fed. Cl. 373, 388 (2018); *United States v. Horowitz*, 361 F. Supp. 3d 511, 515–16 (D. Md. 2019); *United States v. Park*, 389 F. Supp. 3d 561, 571-74 (N.D. Ill. 2019).  Indeed, "every court to have considered this issue since *Wahdan* and *Colliot* [the cases cited by Mr. Rum] has concluded that the statute and the regulation conflict, the statute controls, and, as such, the IRS is not bound by the limit in the regulation."  *Schoenfeld*, 2019 WL 2603341, at *4.

In Objection II, Mr. Rum wrongly argues that post-2004 reiterations of the old regulation nonetheless should limit the maximum penalty to the lower amount described in 31 C.F.R. § 1010.820(g)(2).  (Doc. 72 at 4.)  First, an agency may not set a lower penalty amount by regulation when Congress has mandated a higher maximum penalty by statute, as the Magistrate Judge correctly found.  (Doc. 71 at 13-14.)  The statute does more than "merely provide[] FinCEN with the discretion to impose a higher, maximum penalty than previously possible," as Mr. Rum suggests.  (Doc. 72 at 5.)  As the Magistrate Judge found, Congress has *mandated* that the potential maximum penalty *shall* be increased to the levels described in the amended statute, and the agency has no discretion to set any different

17915908.1

amount to serve as the maximum that is available to be applied in all cases.  (Doc. 71 at 13-14.)

In addition, Mr. Rum's argument rests on the faulty premise that Treasury ever intended to set a potential maximum penalty that was less than the maximum amount set by statute.  As the United States described in its opposition to Mr. Rum's motion for summary judgment, the regulation at issue merely tracked the maximum penalty rules in the statute, as the statute existed before it was amended in 2004.  (Doc. 55 at 5.)  In enacting the regulation, the Secretary did *not* express any intent to limit its discretion to assess penalties for willful FBAR violations.  As described in the regulation's preamble, the regulation's sole purpose was to "reflect" the "civil penalties for violations" of the statute "after October 1986," and accordingly, it tracked but did not alter the rules for calculating the maximum penalty in the statute, as the statute then existed.  52 FR 11436, 11440 (Apr. 8, 1987) ("Discussion of Comments," No. (20)).  The Treasury did not, in any way, implement a regulatory requirement that—independently of the statute—would limit the Secretary's discretion to assert the maximum penalty authorized by the statute.  Indeed, in declining to establish a safe harbor that some commenters requested, the Secretary made clear his intent "to enforce the Bank Secrecy Act . . . to the fullest extent possible," *id.*, which belies the suggestion that Treasury was trying to limit the broad discretion that Congress had granted it under the statute.

And ministerial reiterations of the regulation after 2004 likewise did not express any intent to limit the Secretary's full range of discretion under the amended statute.  Although Mr. Rum is less than clear, it appears that he points to the renumbering of the original

7

17915908.1

regulation and indexing the $100,000 penalty amount to inflation in support of his argument. (*See* Doc. 72 at 4.)  Those ministerial tasks cannot be an exercise of the Secretary's discretion to limit the maximum penalty.  The Secretary cannot sub silentio "ratify" the obsolete regulation in order to take a new position without providing a new rationale through notice-and-comment.  *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy sub silentio" without violating the Administrative Procedure Act)  But even as a factual matter, these ministerial tasks do not carry the weight that Mr. Rum tries to give them.

With respect to the renumbering task, in 2010, the Treasury reorganized its regulations regarding the Bank Secrecy Act, and in that process, it renumbered the obsolete regulation from 31 C.F.R. § 103.57 to 31 C.F.R. § 1010.820.  *See* Final Rule, 75 FR 65806 (Oct. 26, 2010).  The republication of the regulation with a new number was not an exercise of the Secretary's rulemaking authority to limit the willful FBAR penalty to an amount less than the maximum established by Congress.  Rather, the Treasury was merely "renumbering . . . the BSA regulations in a manner that ma[de] it easier to find regulatory requirements than under the numbering system [previously] used in the [prior] regulations."  *Id*. at 65806. Because the renumbering was ministerial, rather than substantive, the Treasury rejected "all comments . . . that requested a substantive change, or would result in a substantive change," as "outside the scope of th[e] rulemaking."  *Id*. at 65807.  Thus, Treasury declined to repeal portions of the regulations that "appear[ed] . . . obsolete," including "certain portions of the previous 31 C.F.R. § 103.57."  *Id*.  For that reason, the republication of the regulation did not change its validity or effectiveness.

17915908.1

Notably, six months before the Treasury renumbered 31 C.F.R. § 103.57 to 31 C.F.R. § 1010.820, it had proposed changes to certain Bank Secrecy Act regulations that "would require changes to the instructions to the FBAR."  Notice of Proposed Rulemaking, 75 FR 8844, 8849 (Feb. 26, 2010).  The proposed draft instructions stated:

> A person who willfully fails to report an account or account identifying information may be subject to a civil monetary penalty equal to the greater of $100,000 or 50 percent of the balance in the account at the time of the violation. See 31 U.S.C. § 5321(a)(5).

*Id.* at 8854.  The proposed draft instructions make clear the Treasury's view—*before* it reorganized the regulations—that § 5321(a)(5) of the statute (and *not* 31 C.F.R. § 103.57) governed the maximum penalty for a willful FBAR violation.  Even earlier, in July of 2008, the IRS had also acknowledged in the Internal Revenue Manual that "the regulations at 31 C.F.R. § 103.57 ha[d] not been revised to reflect the change in the willfulness penalty ceiling," but it nevertheless stated that "the statute is self-executing and the new penalty ceilings apply." I.R.M. § 4.26.16.4.5.1 (07-01-2008), *available at* 2008 WL 5900930.  Thus, both Treasury and the IRS consistently applied the penalty ceilings under the statute to willful FBAR violations, even though those ceilings were higher than those in the obsolete regulation.  The outdated regulation became obsolete when Congress amended the statute in 2004, and the Secretary did nothing thereafter to re-adopt it.

Turning to the regulation indexing $100,000 to inflation, found at 31 C.F.R. § 1010.821(b), it only provides inflation calculations for penalties that are subject to adjustment under the Federal Civil Penalties Inflation Adjustment Act ("FCPIA") (as further amended by the Federal Civil Penalties Inflation Adjustment Act Improvement Acts of 2015

9

("the "2015 Act"), which is codified as a note under 28 U.S.C. 2461; the interim final rule

promulgating § 1010.821(b) clarifies that the FCPIA does not apply to certain Bank Secrecy

Act penalties that "lack a stated dollars amount and are instead written solely as functions of

violations."  81 FR 42503-01.  Under the FCPIA, "'civil monetary penalty' means any

penalty, fine, or other sanction that—(A)(i) is for a specific monetary amount as provided by

Federal law; or (ii) has a maximum amount provided for by Federal law…."  28 U.S.C.

§ 2461, note.  In a memorandum from the OMB dated February 24, 2016, entitled

"Implementation of the Federal Civil Penalties Inflation Adjustment Act Improvements Act

of 2015," the OMB advised agencies that:

> the adjustment [required by the FCPIA] will apply only to penalties with a
> dollar amount, and will not apply to penalties written as functions of
> violations. …  In the case of a penalty with only some dollar amounts, e.g.,
> 'the penalty shall be the maximum of either twice the value of the transaction
> or $250,000,' only the dollar figure, in this case $250,000, will be subject to
> adjustment.

See OMB, Mem. for the Heads of Executive Depts. and Agencies (Feb. 24, 2016), *available*

*at* https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2016/m-16-

06.pdf.  Accordingly, the FCPIA does not require what should be an obvious proposition: the

Secretary cannot identify an inflation amount for a maximum penalty based on "50-percent

of the account balance" because it is a moving target—a "function of the violation."

Therefore, the Secretary was not setting a lower penalty maximum in implementing

§ 1010.821(b).

    To be clear, the Treasury has never imposed a discretionary cap on the penalty

maximum.  But even if it did, it could not maintain the old penalty maximum after

17915908.1

Congress's 2004 amendments to § 5321.  As the Supreme Court stated: "Agencies may play the sorcerer's apprentice but not the sorcerer himself."  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  Mr. Rum's arguments attempt to cast Treasury as the sorcerer independently setting the maximum FBAR penalty, a role that it has never assumed and never could assume in contravention of Congress's mandate.

> B.      *The Magistrate Judge applied the correct standard of review.*

The Magistrate Judge correctly applied the arbitrary and capricious standard in reviewing the amount of the FBAR penalty that the IRS exercised its discretion to impose. In Objection III, Mr. Rum wrongfully argues that the IRS's fact-finding procedures were deficient and, as result, that he is entitled to *de novo* review of the amount of his FBAR penalty.  (Doc. 72 at 5-7.)   Mr. Rum does not specify how he believes that Revenue Agent Kerkado failed to "fully develop" the issue of the amount of the penalty.  (*See* Doc. 72 at 6.) His argument appears to be that Revenue Agent Kerkado alone should have had unfettered discretion to set a penalty amount and that she should not have recommended a willful penalty after initially recommending a non-willful penalty.  (*See* Doc. 72 at 7.)  But, as the Magistrate Judge correctly concluded, nothing was wrong with Agent Kerkado's decision, along with consultation from her manager, to pursue a willful penalty after IRS counsel pointed out factors that would support the imposition of a willful penalty.  (Doc. 71 at 28-30.)  As the Magistrate Judge found, the administrative record provided ample support for the IRS's decision to impose a willful penalty at the maximum level.  (Doc. 71 at 30-31.)

Mr. Rum also is wrong when he argues that the IRS's fact-finding procedures did not give him a "meaningful opportunity . . . to rebut the agency's findings."  (Doc. 72 at 6.)  As

17915908.1

the Magistrate Judge correctly found, "Rum was provided with a Form 886-a Explanation of Items that set forth, in great detail, the basis for why the IRS ultimately proposed a willful penalty against Rum."  (Doc. 71 at 31.)  The Form 886-a, along with its accompanying Letter 3709, "noted that the IRS was proposing a penalty for *knowingly and willfully* failing to file the FBAR, what options he had after this proposal, and a detailed memorandum setting forth the reasoning of the IRS in reaching this decision."  (Doc. 71 at 34 (emphasis in original).)

If Mr. Rum had wished to raise the Internal Revenue Manual's mitigation factors in arguing against the imposition of the maximum penalty for a willful violation, he could have done so at any time.  As Mr. Rum repeatedly notes, the mitigation guidelines are part of the publicly available Internal Revenue Manual.  Nothing prevented him from raising a viable argument under the publicly available guidelines during the IRS administrative proceedings, including the administrative appeals process in which Mr. Rum participated.  Instead, and as the Magistrate Judge correctly noted, Mr. Rum chose to limit his argument as to the amount of the penalty by simply seeking the "discretionary Assessment whereby the Penalty cannot exceed $10,000," which was the maximum that could be imposed for a *non-willful* violation. (Doc. 71 at 9 (quoting Doc. 58, Ex. 27).)  In other words, Mr. Rum limited his challenge at the administrative level to a claim that his failure to report his foreign bank account was not willful.  Indeed, because Mr. Rum never challenged the IRS's computation of the amount of the FBAR penalty during the examination or on administrative appeal, he waived his right to judicial review of that issue, as the United States argued in its opposition to Mr. Rum's motion for summary judgment.  (See Doc. 55 at 14 17).  Although the Magistrate Judge did

12

not address the United States's waiver argument, it remains a valid reason to reject Mr.

Rum's contention that the IRS abused its discretion in failing to provide him with an

explanation as to why the willful penalty was not imposed in an amount less than 50 percent

of the account balance.

At a minimum, though, Mr. Rum identifies no circumstances that entitle him to *de novo* review of the amount of the FBAR penalty.  The Magistrate Judge appropriately

applied the abuse of discretion/arbitrary and capricious standard in upholding the IRS's

decision to impose the maximum penalty for a willful violation.

      C.      *The Magistrate Judge correctly limited his review to the existing administrative record.*

Mr. Rum incorrectly argues that the Court should look beyond the administrative

record and consider subsequent events in Tax Court in determining whether the IRS abused

its discretion in imposing the maximum penalty amount.  Although Mr. Rum raises a variety

of arguments (found in Objections I, V,VI and VII) as to that point, none of them are

availing.  Mr. Rum is not only wrong when he argues that the extra-record events in Tax

Court should be considered in the first place, but he also is wrong when he argues that the

events in Tax Court compel a different conclusion than the one the IRS reached.

As an initial matter, the Magistrate Judge correctly observed that "a court shall only

review the record before it to ensure that the agency engaged in reasoned decision-making."

(Doc. 71 at 20.)  The Magistrate Judge also was correct when he determined that no

exceptions to that fundamental rule apply here.  The Magistrate Judge correctly rejected

Mr. Rum's contention in Objection VI that the IRS acted in bad faith.  On this point,

17915908.1

Mr. Rum reiterates his arguments from Objection III that the IRS's fact-finding procedures were deficient and that the IRS failed to "fully develop" the issue of the amount of the penalty.  (*See* Doc. 72 at 15-16.)  In particular, Mr. Rum reiterates his argument that "the IRS's resubmission and approval of a willful penalty once a non-willful penalty was proposed and approved" constituted "bad faith" on the part of the IRS.  (Doc. 72 at 15.)  But, as the Magistrate Judge correctly concluded, nothing was wrong with Agent Kerkado's decision, along with consultation from her manager, to pursue a willful penalty after IRS counsel pointed out factors that would support the imposition of a willful penalty.  (Doc. 71 at 28-30.)  As discussed more fully in part II.B, the Magistrate Judge was correct in finding no fault with the IRS's actions, much less any bad faith allegedly inherent in them.  Contrary to Mr. Rum's view, consultation with colleagues and supervisors does not mean that the IRS acted in bad faith or in violation of its policies.  Indeed, multi-level review is a fundamental feature of the IRS's policies.

Mr. Rum's reiteration of his argument that the IRS did not develop and support its imposition of the maximum willful penalty also is unavailing.  (Doc. 72 at 16.)  As the Magistrate Judge correctly found, the 9-page Form 886-a Explanation of Items "set[] forth specific facts, caselaw, statutory authority, factual inconsistencies, and lack of evidence supporting Rum's allegations to support the selection of the penalty."  (Doc. 71 at 34 n.31; *see also* Doc. 71 at 31, 34.)  The detailed discussion in the Form 886-a not only supports the imposition of a penalty for a willful violation, but it also supports the IRS's conclusion that the maximum penalty for a willful violation was appropriate.  In a related vein, the Magistrate Judge correctly found that "the record has thoroughly established through

14

numerous memorandums, depositions, and caselaw that the willful FBAR penalty had a legal

basis" and was not based on any inappropriate bargaining.  (Doc. 71 at 33.)  All in all, the

Magistrate Judge's thoughtful and well-reasoned discussion of why the IRS did not act in bad

faith speaks for itself and more than adequately addresses all Mr. Rum's arguments to the

contrary.  (*See* Doc. 71 at 27-33.)

The same reasons compel rejection of Mr. Rum's argument in Objection VII that

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019), requires the Court to look beyond

the administrative record.  In that case, the Supreme Court described the procedural history in

which the district court had authorized discovery outside the administrative record.  *Dep't of*

*Commerce*, 139 S. Ct. at 2564.  There, some documents that had been submitted in

supplementation of the record conflicted with other documents that initially were submitted

as the record.  *Id.*  After that, the district court had authorized discovery.  In its own holding,

the Supreme Court found that the agency's stated reasons for including a citizenship question

on the 2020 census were "incongruent with what the record reveals about the agency's

priorities and decisionmaking process."  *Id.* at 2575-76.  As a result, the Supreme Court

found that the agency had failed to give a reasoned explanation for its decision and affirmed

the district court's decision to remand to the agency.  *Id.*  In contrast to the situation in *Dep't*

*of Commerce*, there is no evidence that the IRS took a results-oriented approach to its

decision-making on Mr. Rum's FBAR penalty.  In fact, quite the opposite occurred here,

where the IRS reconsidered its initial proposal to impose a non-willful penalty in light of

additional relevant information that the Revenue Agent received from IRS counsel.  As the

Magistrate Judge correctly concluded, nothing was wrong with Agent Kerkado's decision,

17915908.1

along with consultation from her manager, to pursue a willful penalty after IRS counsel

pointed out factors that would support the imposition of a willful penalty.  (Doc. 71

at 28-30.)  As the Magistrate Judge also found, the administrative record provided ample

support for the IRS's decision to impose a willful penalty at the maximum level.  (Doc. 71 at

30-31.)  Here, the record shows that the IRS duly considered the relevant facts before it.

*Dep't of Commerce* neither compels this Court to look beyond the IRS's record nor

undermines the Magistrate Judge's conclusion that the IRS gave a reasoned explanation for

its penalty decision.

Even if this Court were authorized to look beyond the administrative record, the

subsequent Tax Court events that Mr. Rum asks the Court to consider do not compel a

different conclusion as to the appropriate amount of Mr. Rum's FBAR penalty.  Anything

that happened in the Tax Court is irrelevant here.  Mr. Rum is wrong when he argues in

Objection I that the mitigation factor at issue looks to whether the *Tax Court* eventually

sustains or determines a civil fraud penalty.  As the Magistrate Judge correctly notes, the

relevant portions of the Internal Revenue Manual speak in terms of what the *IRS* does in

relation to a civil fraud penalty, not what the *Tax Court* might later do.  (Doc. 71 at 32.)

Mr. Rum also is wrong when he argues (in Objections I and VI) that the IRS had not

"sustained" the civil fraud penalty when Revenue Agent Kerkado referred to it as "being

proposed and appealed."  (Doc. 72 at 1, 16.)  The Internal Revenue Manual does not define

"sustain," but it uses "sustain" and "determine" interchangeably when it describes what the

IRS must do in relation to the civil fraud penalty for the relevant mitigation factor not to

apply.  *See* IRM Exhibit 4.26.16-2 (July 1, 2008) at ADM003636 (available at Doc. 31-21

16

17915908.1

at 27) (providing that mitigation may be available if the "IRS did not *determine* a fraud penalty against the person for an underpayment of income tax for the year in question due to the failure to report income related to any amount in a foreign account") (emphasis added); IRM 4.26.16.4.6.1(2)(d) (July 1, 2008) at ADM003629 (available at Doc. 31-21 at 20) (describing the same mitigation factor in terms of whether "[t]he Service did not *sustain* a civil fraud penalty against the person for an underpayment for the year in question due to the failure to report income related to any amount in a foreign account") (emphasis added).  The interchangeable use of "sustain" and "determine" indicates that, in this context, "sustain" does not carry a narrow definition limited to review in an appeals process, as Mr. Rum tries to suggest.  Instead, "sustain" in this context should be interpreted more generally as "to allow or admit as valid" or "to support by adequate proof," *see* Merriam Webster's Collegiate Dictionary 1188 (10th ed. 1997), which is more in line with "determine."  It is undisputed that the IRS administratively determined that Mr. Rum should be liable for a civil fraud penalty, and it is that determination that is relevant to the mitigation factor.  But even if "sustain" were given a narrower, appeals-context meaning, the Magistrate Judge correctly found that the IRS had sustained the civil fraud penalty, which had been proposed by Revenue Agent Kerkado, through other levels of administrative review.  (Doc. 71 at 31-32.)[2]

---

[2] In any event, even if Mr. Rum's argument about the meaning of this mitigation factor were correct, he still would not be *entitled* to a smaller penalty.  The IRM provision in question uses the permissive "*may*," and does not say that a person *shall* be entitled to a smaller penalty if all the mitigation factors apply.  And, as the Magistrate Judge also noted, the IRM provides that a person "*may* be subject to less than the maximum FBAR penalty *depending on the amounts in the person's accounts*" if the mitigation factors are met.  (Doc. 71 at 32 (quoting IRM 4.26.16.4.6.1(1) (July 1, 2008) at ADM003629 (available at Doc. 31-21 at 20)

17915908.1

In addition, Mr. Rum is wrong when he argues in Objection V that the settlement

reached in Tax Court should have precluded the IRS's earlier determination that the

mitigation factor at issue did not apply.  (Doc. 72 at 10-11.)  As the Magistrate Judge

correctly found, the IRS already had sustained the finding of a civil fraud penalty through its

administrative actions, which is all that the mitigation factor contemplates.  (Doc. 71

at 31-32.)  "Anything that occurred subsequently is irrelevant within the I.R.S. context, such

as the Tax Court order—indeed, if anything beyond the I.R.S. examination and appeals

process [for a civil fraud penalty] would prove pertinent, it would render the very mitigation

guidelines moot as the I.R.S. would be unable to consider them when deciding a [FBAR]

penalty."  (Doc. 71 at 32.)

Mr. Rum's arguments notwithstanding, the Magistrate Judge properly limited his

review to the IRS's record in determining that the IRS's decision to impose the statutory

maximum FBAR penalty against him (for the one year that the IRS chose to impose any

penalty)[3] was consistent with the IRS's internal guidelines as expressed in the Internal

Revenue Manual.  In any event, and as described in the United States' motion for summary

judgment (Doc. 31 at 15), the Internal Revenue Manual lacks the force of law and does not

---

(emphasis added).)  For a person like Mr. Rum, whose account exceeded $1 million, his
violation is classified as Level IV under the IRM and thus presumptively carries the
maximum statutory penalty, even if all the mitigation factors applied.  *See*
IRM 4.26.16.4.6.3(3)(d) (July 1, 2008) at ADM003631 (available at Doc. 31-21 at 22); IRM
Ex. 4.26.16-2 (July 1, 2008) at ADM003637 (available at Doc. 31-21 at 28).

[3] As Mr. Rum first opened an overseas account with $1.1 million in 1998 and did not file his
first FBAR until filing one for 2008 on October 15, 2009, the IRS could have assessed
multiple FBAR penalties against Mr. Rum.  (Doc. 71 at 1-2, 5.)  It assessed an FBAR penalty
only for 2007.

17915908.1

convey substantive rights upon taxpayers to challenge any alleged failures of the IRS to follow its guidelines.

  D.  *The Magistrate Judge correctly found that the IRS gave sufficient notice and a reasoned explanation for its administrative decision.*

  In Objection VIII, Mr. Rum wrongly argues that the IRS did not give him proper notice of the penalty proposed against him and that the IRS did not give a reasoned explanation to support the imposition of the maximum penalty for a willful violation. (Doc. 72 at 18-19.)  Those arguments overlap with the grounds that Mr. Rum raised in Objection III, which the United States has addressed above in part II.B.  For the reasons discussed there, the Magistrate Judge correctly found that the IRS gave sufficient notice and a reasoned explanation for its decision to impose the maximum penalty for Mr. Rum's willful failure to disclose his foreign bank account.

  E.  *The Magistrate Judge did not make inappropriate findings as to Mr. Rum's credibility.*

  Contrary to Mr. Rum's arguments in Objection IX, the Magistrate Judge did not violate the standards for summary judgment by making inappropriate findings as to Mr. Rum's credibility.  When the Magistrate Judge discussed issues as to Mr. Rum's credibility, it was in the context of determining whether the IRS had a rational basis for considering the civil fraud penalty as disqualifying Mr. Rum from eligibility for mitigation from the maximum FBAR penalty.  (Doc. 71 at 22-23.)  As the Magistrate Judge noted, lack of credibility of the taxpayer's testimony is one of the many "badges of fraud" that will support the applicability of a civil fraud penalty.  (Doc. 71 at 23.)  The Magistrate Judge's discussion shows that he merely was discussing the record then before the IRS and finding

that the IRS acted reasonably (and not arbitrarily or capriciously) in making its conclusions based on that record, including a conclusion that Mr. Rum had not been credible in his explanations.  The Magistrate Judge was not making a *de novo* determination that Mr. Rum's testimony is not credible – he merely was exploring whether the record before the IRS was sufficient for the IRS to have considered the civil fraud penalty as a bar to mitigation.  And to the extent that the Magistrate Judge commented on inconsistencies in Mr. Rum's presentation to this Court (such as Mr. Rum's allegation that he used a tax preparer to complete his returns, even though his relevant returns are marked as "Self-Prepared") (*see* Doc. 71 at 24), Mr. Rum cannot create a genuine issue of material fact, and thus defeat summary judgment, by espousing inconsistent facts himself.  *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1191 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016); *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1276 (S.D. Fla. 2004), *aff'd*, 140 F. App'x 168 (11th Cir. 2005).

## CONCLUSION

The Magistrate Judge correctly determined that Mr. Rum willfully failed to report his foreign account and that the IRS did not abuse its discretion in assessing the maximum penalty for a willful violation of the FBAR reporting requirement.  The United States urges the Court to accept the Magistrate Judge's thorough and well-reasoned Report and Recommendation to enter summary judgment in favor of the United States and against Mr. Rum.

17915908.1

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

By:     /s/ Laura M. Conner
        Laura M. Conner
        Trial Attorney, Tax Division
        U.S. Department of Justice
        P.O. Box 14198
        Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 514-6484
        Facsimile: (202) 514-9868
        Laura.M.Conner@usdoj.gov

17915908.1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing United States'

Response to Defendant's Objections to Report and Recommendation has been filed this 13th

day of September, 2019 with the Court via ECF, which will transmit an electronic copy to all

counsel of record.


/s/ Laura M. Conner
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, DC 20044

17915908.1